E. MARTIN ESTRADA
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
SHAWN J. NELSON (Cal. Bar No. 185149)
KYLE W. KAHAN (Cal. Bar No. 298848)
KELLYE NG (Cal. Bar No. 313051)
JASON A. GORN (Cal. Bar No. 296179)
Assistant United States Attorneys
     1400/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5339/2238/8408/7962
     Facsimile: (213) 894-0142
     E-mail:    shawn.nelson@usdoj.gov
                kyle.kahan@usdoj.gov
                jason.gorn@usdoj.gov
                kellye.ng@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICHAEL LERMA, *et al.*,<br><br>　　　　Defendants. | No. CR 18-00172(A)-GW<br><br>GOVERNMENT'S MOTION *IN LIMINE* #3 FOR FINDING OF UNAVAILABILITY AND ADMISSION OF PRIOR TESTIMONY OF UNAVAILABLE WITNESSES; EXHIBITS FILED PUBLICLY AND CONCURRENTLY UNDER SEAL<br><br>Hearing Date: February 3, 2025<br>Hearing Time: 8:00 a.m.<br>Location:　　Courtroom of the<br>　　　　　　 Hon. George Wu |

　　　Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kyle W. Kahan, Kellye Ng, and Jason A. Gorn, hereby files its motion in limine #3 requesting a finding of unavailability for government witnesses C.V. and R.R. and admission of a transcript documenting their prior

testimony in a preliminary hearing related to acts charged against defendants Carlos Gonzalez and Juan Sanchez.

This motion in limine is based upon the attached memorandum of points and authorities, the files and records in this case, exhibits, and such further evidence and argument as the Court may permit.

Dated: January 6, 2025              Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

*/s/ Kyle W. Kahan*
SHAWN J. NELSON
KYLE W. KAHAN
KELLYE NG
JASON A. GORN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

In May 2015, defendants Carlos Gonzalez and Juan Sanchez kidnapped and conspired to kill C.V., a woman who had access to money they wanted.  Both were subsequently prosecuted and convicted locally for kidnapping and using a firearm during the commission of the offense.  C.V. and another member of the conspiracy and a percipient witness, R.R., both testified against defendants at preliminary hearing.  Subsequent to the convictions, C.V. died in a car accident and R.R. was murdered.  The government seeks to introduce the preliminary hearing testimony of C.V. and R.R. against defendants Carlos Gonzalez and Sanchez pursuant to Federal Rule of Evidence 804(b)(1).  Gov't Exhibit ("Ex.") A – Aug. 5, 2015 R.R. Preliminary Hearing Testimony Transcript; Ex. B – Aug. 5, 2015 C.V. Preliminary Hearing Transcript.  The prior testimony would be used solely against defendants Carlos Gonzalez and Juan Sanchez.[1]  Because C.V. and R.R. are both unavailable and testified in a hearing where they were subject to a fully developed and motivated cross-examination, the prior transcripts should be admitted and read to the jury.[2]

**II.  STATEMENT OF FACTS**

In the weeks leading up to May 8, 2015, C.V. met defendant Carlos Gonzalez through a mutual acquaintance, "Bulldog."  After learning that she needed to move her motor home from Claremont, Gonzalez told Bulldog he could take it to a house in Pomona.  C.V. spent the night in the motor home and was told by Bulldog and his son

---

[1] The government will seek a limiting instruction to this effect.

[2] The government provided notice of its intent to use the transcripts on December 30, 2024.

that she needed to give them $5,000 from her bank account and threatened to torture and kill her if she did not.  C.V. stalled and came up with excuses to delay giving them the money.  During that time period, Bulldog kept C.V. in his house despite her desire to return to her motor home and her belongings.

On May 7, 2015, defendant Juan Sanchez arrived at Bulldog's house.  C.V. informed Sanchez that she could provide him a $500 refund from a bail bondsman on a bail that she previously and reluctantly posted for Bulldog's son – an acquaintance of Gonzalez and Sanchez -- as part of a tax imposed on her by Bulldog.  After advising Sanchez of this, C.V. learned the refund could be picked up even earlier than expected.  Upon learning this, Bulldog told C.V. to pick up the refund and give it to him so that he could provide it to Gonzalez and Sanchez.  C.V. told Sanchez of this later that day.

That evening, Gonzalez and another man drove C.V. to her motor home in Pomona.  Gonzalez advised C.V. that he ransacked her home to search for a gun belonging to Bulldog.  Upon entering, Gonzalez noted that the motor home was in a greater state of chaos than he left it and that others had came back and took C.V.'s belongings.  C.V. then went to Gonzalez's home.  The following day, R.R. picked C.V., Gonzalez, and Sanchez up and drove them to Temple City.  There, Gonzalez and Sanchez took C.V.'s belongings while R.R. made her stay inside.  C.V. alerted Gonzalez about her missing bag and he advised he would send R.R. to pick her up.  At some point, C.V. became aware that she, Gonzalez, Sanchez, and R.R. would drive to the bail bondsman to collect the $500 refund.

Later that day, at around 3:00 p.m., R.R. picked C.V. up in a black Chevy Avalanche.  R.R. told C.V. that she needed to leave, that

she was in danger, and that Gonzalez was going to kill her. R.R. called Pomona Police Department Detective Bebon for assistance. The two stopped at a shopping center and spoke to Detective Bebon. The three devised a plan where R.R. and C.V. would pick up defendants Carlos Gonzalez and Juan Sanchez and law enforcement would follow the group to protect her from harm. R.R. then drove C.V. to pick up defendants Carlos Gonzalez and Juan Sanchez from Pomona. The two picked up Gonzalez and Sanchez outside an apartment building in Pomona. Gonzalez and Sanchez were both upset at R.R. for being late. After arriving, Gonzalez told C.V. to get out of the front seat and enter the back. C.V. felt she did not have a choice and complied. After C.V. entered the backseat, Gonzalez placed handcuffs on C.V. and told her to lie down. While in the car, C.V. saw Gonzalez and Sanchez were both armed with firearms. C.V. believed that Gonzalez and Sanchez intended to hurt or kill her based off concerns made to her by R.R. Shortly after, police began to trail the Avalanche. As this happened, Gonzalez held onto C.V. with her head in his lap. C.V. also saw Sanchez had a pistol once inside the car.

    The police attempted to pull the Avalanche over. As R.R. hesitated to pull over, Gonzalez yelled at him to go. Sanchez then drew his gun on R.R. and told him to go. R.R. then led the police on a pursuit at gunpoint. During the pursuit, Gonzalez told Sanchez to "get rid of it." The two then threw their firearms out of the car before R.R. stopped. Once they stopped, Gonzalez removed the handcuffs from C.V. and threw them on the car's floorboard. The entire pursuit was captured on dash cam video. Pomona Police Department Officers detained the four occupants and searched the car.

3

1  Inside, officers found a pair of handcuffs with the name "Ruiz"
2  etched in.
3     After a brief search, Pomona Police Department officers found a
4  Rohm model RG-12 .22 caliber revolver loaded with eight rounds of
5  ammunition in the area Sanchez threw it out of the car during the
6  pursuit.
7     On August 9, 2016, C.V. died in Fort Mohave, Mohave, Arizona
8  after a car accident.  Ex. C – C.V. Death Certificate; Ex. D – Aug.
9  9, 2016 Arizona Department of Public Safety Crash Report.  On
10 February 27, 2023, R.R. was shot dead in Las Vegas, Nevada.  Ex. E –
11 Clark County Coroner Report of Investigation.
12 **III. ARGUMENT**
13    A witness's prior testimony is not hearsay if they are: (1)
14 unavailable to testify; (2) provided testimony "at a trial, hearing";
15 and (3) the prior testimony is being "offered against a party who had
16 . . . an opportunity and similar motive to develop it by direct,
17 cross-, or redirect examination."  Fed. R. Evid. 804(b); United
18 States v. Salerno, 505 U.S. 317, 321 (1992).  A declarant is
19 unavailable if they are deceased.  Fed. R. Evid. 804(a)(4).  A
20 defendant's rights are not implicated under the Confrontation Clause
21 when Rule 804(b)(1)'s requirements are met.  See United States v.
22 Yida, 498 F.3d 945, 950 (9th Cir. 2007) ("Rule 804(b)(1) implements
23 the command of the Sixth Amendment's Confrontation Clause.").
24 Whether a party had a similar motive to develop testimony at a prior
25 hearing is "inherently a factual inquiry," dependent on "the
26 similarity of the underlying issues and on the context of the . . .
27 questioning."  Salerno, 505 U.S. at 326 (cleaned up).  The motive at
28 the prior hearing does not have to be an "identical quantum of

4

motivation" that would be present at a trial. United States v. McFall, 558 F.3d 951, 963 (9th Cir. 2009).

### A. R.R. and C.V. Are Unavailable to Testify

As a result of their actions, defendants were charged in state court with kidnapping C.V., kidnapping R.R., use of a firearm during the kidnapping of C.V. and R.R., assault with a firearm against R.R., use and carrying of a firearm during the assault, and that the offenses were done in furtherance of a street gang. Gov't Ex. F – People v. Gonzalez and Sanchez, Case No. KA109699 Felony Complaint. Because defendants were charged with felonies, they were entitled to a preliminary hearing. Cal. Penal Code § 859b. On August 5, 2015, R.R. and C.V. testified in a preliminary hearing against defendants Carlos Gonzalez and Juan Sanchez.[3] Ex. A at 4; Ex. B at 4. Both R.R. and C.V. were subject to cross-examination. R.R. was cross-examined by both defendants' counsel. Ex. A at 19, 21; Ex. B at 21, 26, 58-59. The questions involved his role in the pursuit, his relationship with defendant Sanchez and C.V., his actions prior to the pursuit, his familiarity with the car he drove, his conversations with law enforcement, and his use of methamphetamine the day of the incident. See generally Ex. A.

C.V. was also cross-examined by both defendants' counsel. Ex. B at 21, 26, 58-59. The topics included, among others, her relationship with defendants and other people involved in the incident, her motive to travel with defendants, her meeting with Detective Bebon and R.R. and their subsequent plan, the police pursuit, her drug use, and her criminal record. See generally Ex. B.

---

[3] The hearing also served as a probation violation hearing against defendant Sanchez.

5

Defense counsel for defendant Sanchez explicitly informed the court that his questions were designed to elicit information "just in case [C.V.]'s not available at trial." Defendants' counsel moved to dismiss all counts at the end of the hearing for insufficiency evidence. Ex. G – Aug. 5, 2015 Preliminary Hearing Arguments Transcript.

### B. Defense Counsel Had an Opportunity and Similar Motive to Develop Testimony at the Preliminary Hearing

Defense counsel for both defendants used the opportunity to cross-examine R.R. and C.V. regarding their relationships with the defendants, their drug use, their criminal history, and the details leading up to and during the kidnapping. As indicated by defendant Gonzalez's counsel and their arguments, the "fundamental objective" of the questioning was to discredit R.R. and C.V.'s versions of events, attack their veracity and recollection, and convince the court there was insufficient evidence to support a finding of probable cause they committed the charged offenses. See McFall, 558 F.3d at 963; see also United States v. Poland, 659 F.2d 884, 896 (9th Cir. 1981) (finding the motive of defense cross-examination at a motion to suppress regarding eyewitness identification sufficiently similar); United States v. Geiger, 263 F.3d 1034, 1038-39 (9th Cir. 2001) (same finding regarding motions to suppress statements); but see United States v. Duenas, 691 F.3d 1070, 1089-90 (9th Cir. 2012) (finding the motive of defense cross-examination at a motion to suppress limited to the voluntariness of defendant's statements to not be sufficiently similar). Moreover, because it was a preliminary hearing, the People were not limited in their post-hearing charging decisions to what was initially charged. Rather, the People were

6

entitled to file an information with "either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed."[4] Because the fundamental objective of cross-examination at the preliminary hearing was sufficiently similar to a trial, both R.R. and C.V.'s prior testimony should be admitted.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court grant the government's motion in limine.

The undersigned, counsel of record for the United States of America, certifies that this brief contains 1,766 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 6, 2025            Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  LINDSEY GREER DOTSON
                                  Assistant United States Attorney
                                  Chief, Criminal Division

                                  /s/ Kyle W. Kahan
                                  SHAWN J. NELSON
                                  KYLE W. KAHAN
                                  KELLYE NG
                                  JASON A. GORN
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

---

[4] I.e., if the People proved that defendant Gonzalez committed the elements required to find probable cause that he attempted to murder C.V., they were authorized to file charges under California Penal Code Section 664/187.

7

**DECLARATION OF KYLE W. KAHAN**

I, Kyle W. Kahan, declare as follows:

1. I am an Assistant United States Attorney with the United States Attorney's Office – Central District of California. I am one of the prosecuting attorneys in United States v. Lerma, *et al.*, 2:18-CR-00172(A)-GW.

2. Attached to this motion in limine are true and correct copies of the following government exhibits:

| Exhibit No. | Exhibit Name |
|---|---|
| A | Aug. 5, 2015 R.R. Transcript **(Under Seal)** |
| B | Aug. 5, 2015 C.V. Transcript **(Under Seal)** |
| C | C.V. Death Certificate **(Under Seal)** |
| D | Aug. 9, 2016 Arizona Department of Public Safety Crash Report **(Under Seal)** |
| E | Clark County Coroner Report of Investigation **(Under Seal)** |
| F | People v. Gonzalez and Sanchez, Case No. KA109699 Felony Complaint |
| G | Aug. 5, 2015 Preliminary Hearing Transcript – Arguments **(Under Seal)** |

3. Due to the sensitive nature of the exhibits or that the exhibits were disclosed under a protective order, the government will move to file Exhibits A, B, C, D, E, and G under seal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that

8

this declaration is executed at Los Angeles, California, on January 6, 2025.

                                                KYLE W. KAHAN

9