JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
KYLE W. KAHAN (Cal. Bar No. 298848)
KELLYE NG (Cal. Bar No. 313051)
JASON A. GORN (Cal. Bar No. 296179)
Assistant United States Attorneys
      1400/1300 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-2238/8408/7962
      Facsimile: (213) 894-0142
      E-mail:    kyle.kahan@usdoj.gov
                 kellye.ng@usdoj.gov
                 jason.gorn@usdoj.gov


Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>                    v.<br><br>MICHAEL LERMA, ET AL.,<br>      [#1 MICHAEL LERMA]<br>      [#6 CARLOS GONZALEZ]<br>      [#7 JUAN SANCHEZ]<br>      [#8 JOSE VALENCIA GONZALEZ]<br><br><br>          Defendants. | No. CR 2:18-00172(A)-GW<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Trial Date:  February 25, 2025<br>Trial Time:  8:00 a.m.<br>Location:    Courtroom of the<br>             Honorable George H.<br>             Wu |

        Plaintiff United States of America, by and through its counsel

of record, the Acting United States Attorney for the Central District

of California and Assistant United States Attorneys Kyle W. Kahan,

//

//

//

Kellye Ng, and Jason A. Gorn, hereby submits its trial memorandum in the above-captioned case.

Dated: February 18, 2025          Respectfully submitted,

                                  JOSEPH T. MCNALLY
                                  Acting United States Attorney

                                  LINDSEY GREER DOTSON
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                        */s/ Jason A. Gorn*
                                  _____
                                  KYLE W. KAHAN
                                  KELLYE NG
                                  JASON A. GORN
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                          PAGE

TABLE OF AUTHORITIES.................................................................iii

**TRIAL MEMORANDUM**...................................................................1

**I.    STATUS OF THE CASE**...........................................................1

        **A.   Trial Schedule**........................................................1

        **B.   Witnesses**.............................................................1

**II.   STATEMENT OF THE CHARGES AGAINST DEFENDANTS**....................1

**III.  ELEMENTS OF THE CHARGED OFFENSES**..............................3

**IV.   STATEMENT OF FACTS**...........................................3

**V.    ANTICIPATED LEGAL AND EVIDENTIARY ISSUES**.......................3

        **A.   Stipulations**..........................................................3

        **B.   Court's Finding of Legislative Fact Regarding Federal
               Jurisdiction for MDC**..................................3

        **C.   Reciprocal Discovery**...........................................4

        **D.   Defendants May Not Introduce Their Statements or Their
               Co-Conspirators' Statements because they are Hearsay**......6

               1.   Defendants' Statements..............................6

               2.   Co-Conspirator Statements...........................8

                    a.   Statements Made During the Course of the
                         Conspiracy...................................8

                    b.   Statements Made Before a Defendant Joined
                         the Conspiracy...............................9

        **E.   Jury Nullification**..........................................10

               1.   Defendants Should be Precluded from Referencing
                    or Arguing before the Jury About Defendants'
                    Penalty Upon Conviction.............................10

               2.   Defendants Should be Precluded from Referencing
                    Indigency or Health-Related Issues..................11

        **F.   Affirmative Defenses**........................................12

        **G.   Recorded Statements**........................................12

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                                    PAGE

        1.    Authentication and Identification...................12

        2.    Transcripts of Recorded Statements.................14

H.    **Expert Opinion Testimony**................................15

        1.    Government Experts.................................16

          a.    Testimony Pursuant to United States v. Diaz....*16*

        2.    Defense Experts...................................17

I.    **Case Agent's Lay Testimony Will Aid the Jury's Understanding of the Certain Evidence**...................18

J.    **Discretion as to Order of Proof**........................21

K.    **Physical Evidence**......................................21

L.    **Photographs**............................................23

M.    **Charts and Summaries**..................................24

N.    **Business Records and 902(11) Notice**...................25

VI.    **CONCLUSION**................................................26

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                                          <u>PAGE</u>

<u>CASES</u>:

<u>Bourjaily v. United States</u>,
     483 U.S. 171 (1987) ........................................... 8, 9

<u>Diaz v. United States</u>,
     602 U.S. 526 (2024) ........................................... 17

<u>Gallego v. United States</u>,
     276 F.2d 914 (9th Cir. 1960) ................................. 22

<u>Lucero v. Stewart</u>,
     892 F.2d 52 (9th Cir. 1989) .................................. 23

<u>People of Territory of Guam v. Ojeda</u>,
     758 F.2d 403 (9th Cir. 1985) ................................. 24

<u>United States v. Adamo</u>,
     882 F.2d 1218 (7th Cir. 1989) ................................ 10

<u>United States v. Aiyaswamy</u>,
     2017 WL 1365228 (N.D. Cal. Apr. 14, 2017) ..................... 5

<u>United States v. Albertelli</u>,
     687 F.3d 439 (1st Cir. 2012) ................................. 19

<u>United States v. Anderson</u>,
     532 F.2d 1218 (9th Cir. 1976) ................................ 10

<u>United States v. Andersson</u>,
     813 F.2d 1450 (9th Cir. 1987) ............................ 15, 20

<u>United States v. Arbelaez</u>,
     719 F.2d 1453 (9th Cir. 1983) ................................. 9

<u>United States v. Arcuria</u>,
     No. CR 09-01320 SJO, 2010 WL 11545587,
     at *5-6 (C.D. Cal. Aug. 13, 2010) ............................ 11

<u>United States v. Avendano</u>,
     455 F.2d 975 (9th Cir. 1972) ................................. 21

<u>United States v. Beltran-Rios</u>,
     878 F.2d 1208 (9th Cir. 1989) ................................ 20

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

<u>United States v. Black</u>,
    767 F.2d 1334 (9th Cir. 1985) ................................... 22

<u>United States v. Blackwood</u>,
    878 F.2d 1200 (9th Cir. 1989) ................................... 22

<u>United States v. Boulware</u>,
    470 F.3d 931 (9th Cir. 2006) .................................... 24

<u>United States v. Branch</u>,
    91 F.3d 699 (5th Cir. 1996) ...................................... 7

<u>United States v. Burreson</u>,
    643 F.2d 1344 (9th Cir. 1981) .................................... 6

<u>United States v. Chu Kong Yin</u>,
    935 F.2d 990 (9th Cir. 1991) ................................ 21, 22

<u>United States v. Coe</u>,
    718 F.2d 830 (7th Cir. 1983) .................................... 10

<u>United States v. Collicott</u>,
    92 F.3d 973 (9th Cir. 1996) ...................................... 7

<u>United States v. Cunningham</u>,
    194 F.3d 1186 (11th Cir. 1999) ................................... 6

<u>United States v. De Peri</u>,
    778 F.2d 963 (3d Cir. 1985) ..................................... 19

<u>United States v. DeGeorge</u>,
    380 F.3d 1203 (9th Cir. 2004) .................................... 8

<u>United States v. DiCesare</u>,
    765 F.2d 890 (9th Cir.) .......................................... 9

<u>United States v. Ellison</u>,
    704 F. App'x 616 (9th Cir. 2017) ................................. 5

<u>United States v. El-Mezain</u>,
    664 F.3d 467 (5th Cir. 2011) .................................... 19

<u>United States v. Espinosa</u>,
    827 F.2d 604 (9th Cir. 1987) .................................... 20

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                 PAGE

United States v. Fernandez,
    839 F.2d 639 (9th Cir. 1988) ....................................... 6

United States v. Frank,
    956 F.2d 872 (9th Cir. 1991) ................................... 10, 11

United States v. Freeman,
    498 F.3d 893 (9th Cir. 2007) ............................... 18, 19, 20

United States v. Fuentes-Montiji,
    68 F.3d 352 (9th Cir. 1995) ................................... 14, 15

United States v. Garcia,
    994 F.2d 1499 (10th Cir. 1993) .................................. 19

United States v. George,
    960 F.2d 97 (9th Cir. 1992) ..................................... 9

United States v. Handlin,
    366 F.3d 584 (7th Cir. 2004) .................................. 10

United States v. Harrington,
    923 F.2d 1371 (9th Cir. 1991) ............................... 22, 23

United States v. Holden,
    2015 WL 1514569 (D. Or. Mar. 19, 2015) ......................... 5

United States v. Hsia,
    2000 WL 195067 (D.D.C. Jan. 21, 2000) .......................... 5

United States v. Jayyousi,
    657 F.3d 1085 (11th Cir. 2011) ................................. 19

United States v. Kenny,
    645 F.2d 1323 (9th Cir. 1981) ................................... 9

United States v. King,
    472 F.2d 1 (9th Cir. 1972) .................................... 22

United States v. King,
    587 F.2d 956 (9th Cir. 1978) ................................... 13

United States v. Knigge,
    832 F.2d 1100 (9th Cir. 1987) ................................... 8

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. Larkin,
  2015 WL 4415506 (D. Nev. July 20, 2015) .......................... 5

United States v. Larson,
  460 F.3d 1200 (9th Cir. 2006) ................................... 8

United States v. Layton,
  855 F.2d 1388 (9th Cir. 1988) ................................... 9

United States v. Little,
  No. CR 08-0244 SBA, 2012 WL 2563796 (N.D. Cal. June 28, 2012) .... 10

United States v. Lynch,
  903 F.3d 1061 (9th Cir. 2018) ................................... 11

United States v. Marin,
  669 F.2d 73 (2nd Cir. 1982) ..................................... 7

United States v. Matta-Ballesteros,
  71 F.3d 754 (9th Cir. 1995) ..................................... 13

United States v. May,
  622 F.2d 1000 (9th Cir. 1980) ................................... 23

United States v. Mendiola,
  707 F.3d 735 (7th Cir. 2013) .................................... 13

United States v. Oaxaca,
  569 F.2d 518 (9th Cir. 1978) .................................... 23

United States v. Ortega,
  203 F.3d 675 (9th Cir. 2000) .................................. 6, 7

United States v. Ortiz,
  776 F.3d 1042 (9th Cir. 2015) ............................... 13, 14

United States v. Pena-Espinoza,
  47 F.3d 356 (9th Cir. 1995) ..................................... 15

United States v. Perez,
  116 F.3d 840 (9th Cir. 1997) .................................... 20

United States v. Perez,
  658 F.2d 654 (9th Cir. 1981) .................................... 21

1

**TABLE OF AUTHORITIES (CONTINUED)**

2    DESCRIPTION                                                                    PAGE

3    United States v. Rizk,
        660 F.3d 1125 (9th Cir. 2011) ................................... 24
4

5    United States v. Rollins,
        544 F.3d 820 (7th Cir. 2008) ................................ 19, 20
6

7    United States v. Rrapi,
        175 F.3d 742 (9th Cir. 1999) ................................... 14

8    United States v. Sanchez,
        798 F. App'x 143 (9th Cir. 2020) .............................. 10
9

10   United States v. Schmit,
        881 F.2d 608 (9th Cir. 1989) ................................... 9
11

12   United States v. Segura-Gallegos,
        41 F.3d 1266 (9th Cir. 1994) ................................... 9
13

14   United States v. Simas,
        937 F.2d 459 (9th Cir. 1991) .................................. 18
15

16   United States v. Smith,
        893 F.2d 1573 (9th Cir. 1990) .................................. 9
17

18   United States v. Stearns,
        550 F.2d 1167 (9th Cir. 1977) ................................. 23
19

20   United States v. Swenson,
        298 F.R.D. 474 (D. Idaho 2014) ................................. 5
21

22   United States v. Taghipour,
        964 F.2d 908 (9th Cir. 1992) .................................. 14
23

24   United States v. Torres,
        908 F.2d 1417 (9th Cir. 1990) .............................. 13, 14
25

26   United States v. Turner,
        528 F.2d 143 (9th Cir. 1975) .............................. 14, 21
27

     United States v. Vasquez-Landaver,
        527 F.3d 798 (9th Cir. 2008) .................................. 12

     United States v. Willis,
        759 F.2d 1486 (11th Cir. 1985) ................................. 6

28

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. Winters,
    530 F. App'x 390 (5th Cir. 2013) .................................. 24

United States v. Zemek,
    634 F.2d 1159 (9th Cir. 1980) ..................................... 21

Williamson v. United States,
    512 U.S. 594 (1994) ............................................... 7

STATUTES:

18 U.S.C. Section 3112 ............................................... 4

RULES:

Fed. R. Crim. P. 12.1-12.3 ........................................... 12
Fed. R. Evid. 701 .................................................... 18
Fed. R. Evid. 702 ................................................ 15, 18
Fed. R. Evid. 703 .................................................... 16
Fed. R. Evid. 704 .................................................... 16
Fed. R. Evid. 704(b) ................................................. 17
Fed. R. Evid. 801(d)(2) .............................................. 6
Fed. R. Evid. 801(d)(2)(A) ........................................... 6
Fed. R. Evid. 801(d)(2)(E) ........................................... 8
Fed. R. Evid. 803(6)(D) .............................................. 25
Fed. R. Evid. 901 .................................................... 22
Fed. R. Evid. 901(a) ................................................. 21
Fed. R. Evid. 901(b) ................................................. 13
Fed. R. Evid. 901(b)(5) .......................................... 13, 14
Fed. R. Evid. 902(11) ................................................ 25
Fed. R. Evid. 1002 ................................................... 24

### TRIAL MEMORANDUM

I.  **STATUS OF THE CASE**

    **A.  Trial Schedule**

Jury trial is set to begin with jury selection on February 25, 2025, at 8:00 a.m. Including jury selection and assuming the trial moves forward efficiently, the government estimates its case-in-chief to finish in the beginning of the week of March 17. If the trial does not move forward efficiently, the government's case-in-chief will carry over to the following week. The government anticipates calling approximately 35 witnesses, though several will be limited to discrete topics, such as chain of custody, language interpretation, or collection of evidence. The defense has recently indicated to the Court that they anticipate the defense case-in-chief to last approximately one week.

    **B.  Witnesses**

The government has filed its amended witness list with the Court, identifying each of its 35 expected witnesses. (ECF No. 1579). By their title and listed designation, the government's noticed witnesses generally fall into five categories: (1) law enforcement witnesses,; (2) expert witnesses; (3) cooperating witnesses; (4) a civilian victim witness; and (5) an evidence custodian.

II.  **STATEMENT OF THE CHARGES AGAINST DEFENDANTS**

Defendants stand charged in a First Superseding Indictment with Racketeer Influenced and Corrupt Organizations Conspiracy ("RICO Conspiracy"), multiple conspiracies to commit Violent Crimes in Aid of Racketeering ("VICAR"), and first-degree murder of S.B., among other crimes.

On February 18, 2025, the government moved to dismiss: (1) Counts Four, Five, and Six; (2) Count Nine as to Jose Valencia Gonzalez only; (3) Count Ten as to defendant Carlos Gonzalez only; (4) Count Thirteen; (5) Count Fourteen; and (6) Count Sixteen. (ECF No. 1592).

The government is proceeding to trial against each defendant on Count One – the RICO Conspiracy. As previously noticed (ECF No. 1573), the government intends to present 31 overt acts done in furtherance of the RICO conspiracy. These include:

- Forwarding Proceeds to defendant Lerma (OAs 1-2; OAs 39-40, OAs 57-58);
- Taxation of Pomona-Area Criminal Activity (OAs 20-27, OAs 54-55);
- Possession of Drugs (OA 28, OA 56);
- Attempted Robbery, Extortion, and Assault (OAs 30-37);
- Possession of a Firearm (OA 38, OA 53); and
- Takeover of the Metropolitan Detention Center – Los Angeles ("MDC") and the Murder of S.B. (OAs 68-70).

The government is also proceeding on Counts Two and Three which are the substantive VICAR and conspiracy counts against defendant Jose Valencia Gonzalez. These counts are tied to the 2013 assault, extortion, and attempted robbery of M.A.

Related to the 2020 in-custody murder of S.B., the government is also proceeding on Counts Seven (VICAR Murder) and Eight (First Degree Murder) for all defendants.

The government is proceeding on Count Ten specifically as to defendants Michael Lerma and Jose Valencia Gonzalez for conspiracy to distribute controlled substances in MDC and the Pomona area.

The government is proceeding on Count Twelve against defendant Jose Valencia Gonzalez as it relates to the Carrying, Brandishing and Discharge of a Firearm in Furtherance of Assault in Aid of Racketeering.

Defendants Jose Valencia Gonzalez, Carlos Gonzalez, and Sanchez are also charged in Counts Seventeen, Eighteen, and Nineteen, respectively, for Felon in Possession of a Firearm and Ammunition.

## III.  ELEMENTS OF THE CHARGED OFFENSES

The elements of the crimes will be included in the government's forthcoming Proposed Jury Instructions.

## IV.  STATEMENT OF FACTS

The government has set forth the facts of this case in multiple charging documents and motions and pretrial litigation in this case. (ECF Nos. 691, 1266, 1268, 1323, 1326, and 1329). The government adopts its statement of facts from those filings.

## V.  ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

### A.  Stipulations

The parties entered into stipulations regarding Counts Seventeen, Eighteen, and Nineteen as to defendants Juan Sanchez, Jose Valencia Gonzalez, and Carlos Gonzalez's predicate prior convictions.

The parties have not been able to reach an agreement on the government's proposed stipulations for Spanish jail call translations, firearm nexus stipulations, surveillance authentication, or jail call authentication.

### B.  Court's Finding of Legislative Fact Regarding Federal Jurisdiction for MDC

This Court has previously granted the government's motion in limine to find that MDC fell within the territorial jurisdiction of

the United States as it relates to First Degree Murder in Count Eight. Previously, the Court indicated it would issue an order to this effect. The government instead requests that the finding be included directly in the Court's jury instructions.

The government's proposed finding within the instruction is as follows:

> On or about June 28, 2020, Metropolitan Detention Center ("MDC") in Los Angeles, was within the special territorial jurisdiction of the United States as defined under Title 18 of the United States Code Section 3112. Specifically, MDC is land reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, by consent of the Governor of the State or in another manner prescribed by the laws of the State where the land is situated, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.
> On July 27, 2016, the Government accepted concurrent criminal legislative jurisdiction over MDC. On August 11, 2016, the California State Lands Commission certified that California gave criminal legislative jurisdiction of MDC to the United States. On August 17, 2016, this record was filed in the Recorder's Office, in Los Angeles County, California.

**C.   Reciprocal Discovery**

The Court should compel defendants to produce reciprocal discovery under Rule 16 and preclude defendants from using unproduced Rule 16 discovery at trial. Under Rule 16, if defendant requests discovery, and the government complies, then defendant must produce discovery upon the government's request. Compare Rule 16(a)(1)(A)-(G) with Rule 16(b)(1)(A)-(C).

Here, defendants have sent general and specific discovery requests to the government. The government has sent over 65 discovery productions in the "LS" discovery series alone to defendants and requested reciprocal discovery (including expert discovery). Combined with those disclosures has been the government's ongoing request for

reciprocal discovery. On February 7, 2025, defendants produced 32 exhibits that are taken from the government's discovery productions that they intend to introduce at trial. On February 15, 2025, defendants supplemented this exhibit disclosure with 15 additional photographs taken from the government's discovery. The Court should order defendants to produce remaining reciprocal discovery no later than February 21. If the defendants do not comply, the Court should preclude defendants from using such discovery at trial.

Federal courts routinely require defendants to produce discovery pursuant to Rule 16 before trial, including evidence defendants intend to use for purposes of cross-examination (so long as that evidence is not used <u>only</u> for impeachment). <u>See, e.g.</u>, <u>United States v. Obukhoff</u>, 8:18-CR-00140-JLS-2, ECF No. 161 (C.D. Cal. July 8, 2021)); <u>United States v. Swenson</u>, 298 F.R.D. 474, 477-78 (D. Idaho 2014); <u>United States v. Aiyaswamy</u>, 2017 WL 1365228, *4-5 (N.D. Cal. Apr. 14, 2017); <u>United States v. Larkin</u>, 2015 WL 4415506, *2-6 (D. Nev. July 20, 2015); <u>United States v. Holden</u>, 2015 WL 1514569, *2-6 (D. Or. Mar. 19, 2015); <u>United States v. Hsia</u>, 2000 WL 195067, *1-2 (D.D.C. Jan. 21, 2000); <u>see also, e.g.</u>, <u>United States v. Ellison</u>, 704 F. App'x 616, 625 (9th Cir. 2017) (affirming order requiring pretrial production of reciprocal discovery). If defendants fail to comply with such an order without good cause, the Court should preclude defendants from using such evidence later at trial under Rule 16(d). <u>See, e.g.</u>, <u>Obukhoff</u>, 8:18-CR-00140-JLS-2, ECF No. 161; <u>Swenson</u>, 298 F.R.D. at 478; <u>Aiyaswamy</u>, 2017 WL 1365228, at *5; <u>Hsia</u>, 2000 WL 195067, *1-2.

If the defense provides mid-trial defense discovery before the defendants' anticipated weeklong case-in-chief, the government

5

1  further seeks leave from the Court to have adequate time to review

2  the provided discovery, run necessary criminal background and

3  conflicts checks, and request offers of proof from the defense as to

4  any newly disclosed witnesses.

5     **D.  Defendants May Not Introduce Their Statements or Their Co-
          Conspirators' Statements because they are Hearsay**

6

7          1.  <u>Defendants' Statements</u>

8      Under the Federal Rules of Evidence, a defendant's statement is

9  admissible only if offered <u>against</u> him; a defendant may not elicit

10 his own prior statements. <u>See</u> Fed. R. Evid. 801(d)(2)(A); <u>United</u>

11 <u>States v. Fernandez</u>, 839 F.2d 639, 640 (9th Cir. 1988). To permit

12 otherwise would place a defendant's statements "before the jury

13 without subjecting himself to cross-examination, precisely what the

14 hearsay rule forbids." <u>United States v. Ortega</u>, 203 F.3d 675, 682

15 (9th Cir. 2000) (holding that the district court properly barred

16 defendant from seeking to introduce his exculpatory post-arrest

17 statements through cross-examination of an INS agent); <u>United States</u>

18 <u>v. Cunningham</u>, 194 F.3d 1186, 1199 (11th Cir. 1999) ("a defendant

19 cannot attempt to introduce an exculpatory statement made at the time

20 of his arrest without subjecting himself to cross examination").

21     When the government admits some of a defendant's prior

22 statements, the door is not thereby opened to the defendant to put in

23 all of his out-of-court statements. This is because, when offered by

24 the defendant, the statements are still inadmissible hearsay. <u>See</u>

25 Fed. R. Evid. 801(d)(2); <u>see also</u> <u>United States v. Burreson</u>, 643 F.2d

26 1344, 1349 (9th Cir. 1981); <u>United States v. Willis</u>, 759 F.2d 1486,

27 1501 (11th Cir. 1985) (defendant's exculpatory statement inadmissible

28 when offered by defense).

Similarly, a defendant's exculpatory statements are not admissible under Federal Rule of Evidence 106, the "rule of completeness." Evidence that is inadmissible is not made admissible by invocation of the "rule of completeness." See United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (hearsay not admissible regardless of Rule 106). As the Ninth Circuit noted in Ortega, a defendant's non-self-inculpatory statements are inadmissible hearsay even if they were made contemporaneously with other self-inculpatory statements. Ortega, 203 F.3d at 682 (citing Williamson v. United States, 512 U.S. 594, 599 (1994)).

The "rule of completeness" may require that all of a defendant's prior statements be admitted only where it is necessary to explain an admitted statement, to place it in context, or to avoid misleading the trier of fact. See, e.g., United States v. Marin, 669 F.2d 73, 84 (2nd Cir. 1982). The doctrine does not, however, require introduction of portions of a statement that are neither explanatory of, nor relevant to, the admitted passages. See Ortega, 203 F.3d at 682-683; Marin, 669 F.2d at 84. The burden is on the defendant to identify a basis for admitting the additional portions of the defendant's prior statement. United States v. Branch, 91 F.3d 699, 729 (5th Cir. 1996). To date, defendants have not indicated that any of the statements the government wishes to introduce require additional statements under the completeness doctrine.

As stated above, the government notified defendants of the portions of defendants' statements and co-conspirator statements to be introduced in noticed disclosures on December 17, 2024 and January 3, 2025. Defendants have not identified any such portions of these noticed statements that require additional statements.

7

2.    <u>Co-Conspirator Statements</u>

The government will move to admit statements made by co-conspirators in furtherance of a conspiracy in furtherance of the Enterprise. As set forth in previous motions, in a RICO or VICAR case, courts have held that evidence about the gang's activity or a defendant's prior involvement in, association with, or membership in the gang enterprise is essential "in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime" and therefore not subject to 404(b) limitations. <u>United States v. DeGeorge</u>, 380 F.3d 1203, 1219 (9th Cir. 2004). The same is true for co-conspirator statements for members of that enterprise. <u>See, e.g.</u>, <u>United States v. Larson</u>, 460 F.3d 1200 (9th Cir. 2006).

The statements include communications about taxing Pomona area drug distribution and stash houses, assaults and robberies, the structure of the Enterprise, and communications afterward regarding the murder of S.B. All are admissible.

a.    Statements Made During the Course of the Conspiracy

A statement made by one co-conspirator during the course and in furtherance of a conspiracy may be used against another co-conspirator because such statements are not hearsay. Fed. R. Evid. 801(d)(2)(E); <u>Bourjaily v. United States</u>, 483 U.S. 171, 183 (1987). A statement admitted under Rule 801(d)(2)(E) does not violate the Confrontation Clause, and no independent inquiry into reliability is needed. <u>Bourjaily</u>, 483 U.S. at 183-84; <u>United States v. Knigge</u>, 832 F.2d 1100, 1107 (9th Cir. 1987), amended 846 F.2d 591 (9th Cir. 1988). Rule 801(d)(2)(E) requires a foundation that: (1) the

declaration was made during the life of the scheme; (2) the declaration was made in furtherance of the scheme; and (3) there is, including the co-schemer's declaration itself, sufficient proof of the existence of the scheme and defendant's connection to it. Bourjaily, 483 U.S. at 173, 181; United States v. Smith, 893 F.2d 1573, 1578 (9th Cir. 1990). These foundational requirements must be established by a preponderance of the evidence. Bourjaily, 483 U.S. at 175; United States v. Schmit, 881 F.2d 608, 610 (9th Cir. 1989). The Court can conditionally admit co-conspirator statements subject to a further foundation being laid. United States v. Arbelaez, 719 F.2d 1453, 1460 (9th Cir. 1983); United States v. Kenny, 645 F.2d 1323, 1333-34 (9th Cir. 1981).

Further, because the co-conspirator exception under the Federal Rules of Evidence is predicated on agency theory – not criminal conspiracy law – the admission of co-conspirator statements is not limited to the statements of individuals charged in the conspiracy and includes statements of others in furtherance of any joint venture. United States v. Layton, 855 F.2d 1388, 1398 (9th Cir. 1988), overruled on other grounds by United States v. George, 960 F.2d 97 (9th Cir. 1992).

> b.   Statements Made Before a Defendant Joined the Conspiracy

A co-conspirator statement made before a defendant joined the conspiracy is also admissible because it is not hearsay. See United States v. Segura-Gallegos, 41 F.3d 1266, 1272 (9th Cir. 1994) ("Statements of his co-conspirators are not hearsay even if made prior to the defendant joining the conspiracy."); United States v. DiCesare, 765 F.2d 890, 900 (9th Cir.), amended on other grounds, 777

F.2d 543 (1985) ("'[A] conspirator who joins a pre-existing

conspiracy is bound by all that has gone on before in the

conspiracy."); United States v. Adamo, 882 F.2d 1218, 1230-31 (7th

Cir. 1989) ("[I]t is well established that a defendant who joins a

conspiracy '[takes] the conspiracy as he found it. When he joined and

actively participated in it he adopted the previous acts and

declarations of his fellow co-conspirators.'") (alteration in

original) (quoting United States v. Coe, 718 F.2d 830, 839 (7th Cir.

1983)); United States v. Anderson, 532 F.2d 1218, 1230 (9th Cir.

1976) ("Statements of a co-conspirator are not hearsay even if made

prior to the entry of the conspiracy by the party against whom it is

used."); United States v. Little, No. CR 08-0244 SBA, 2012 WL

2563796, at *5 (N.D. Cal. June 28, 2012); see also United States v.

Handlin, 366 F.3d 584, 590 (7th Cir. 2004) ("[I]it is irrelevant when

[defendant] joined the conspiracy, so long as he joined it at some

point.").

### E.   Jury Nullification

Defendants are free to argue that the evidence presented at

trial is insufficient to support a guilty verdict. But defendants

should not be permitted to make arguments or introduce evidence

irrelevant to the elements of the charged offense and are instead

designed to promote jury nullification.

### 1.   Defendants Should be Precluded from Referencing or Arguing before the Jury About Defendants' Penalty Upon Conviction

"It has long been the law that it is inappropriate for a jury to

consider or be informed of the consequences of their verdict." United

States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991) (gathering cases

and authority); see also United States v. Sanchez, 798 F. App'x 143,

10

144 (9th Cir. 2020) (holding, in First Degree murder case, that
"[t]he district court properly declined to instruct the jury on the
mandatory minimum life sentence [defendant] faced, as it "has long
been the law that it is inappropriate for a jury to consider or be
informed of the consequences of their verdict" (quoting Frank, 956
F.2d at 879)); United States v. Arcuria, No. CR 09-01320 SJO, 2010 WL
11545587, at *5-6 (C.D. Cal. Aug. 13, 2010) (precluding defendant
from "inform[ing] the jury of the minimum mandatory sentence that
Defendant [] faces."). In fact, a Ninth Circuit model jury
instruction explains that any argument from defendant or his counsel
about the penalty he faces is improper. See Ninth Circuit Model
Criminal Jury Instructions, No. 6.22 (2022 ed.) [Jury Consideration
of Punishment] ("The punishment provided by law for this crime is for
the court to decide. You may not consider punishment in deciding
whether the government has proved its case against the defendant
beyond a reasonable doubt."). If defendants or defense counsel
references the mandatory life sentence defendants face if convicted
or argues that the jury should consider that penalty when determining
guilt, it would be legally improper and unfairly prejudicial to the
government. Therefore, the Court should preclude defendants and their
counsel from referencing or arguing before the jury about any penalty
defendants are facing if they are convicted.

        2.    <u>Defendants Should be Precluded from Referencing
                Indigency or Health-Related Issues</u>

    Trial courts "have a duty to forestall or prevent" jury
nullification, including by preventing "impermissible" defense
questioning or argument. United States v. Lynch, 903 F.3d 1061, 1079-
80 (9th Cir. 2018) (citation omitted). The government seeks to

11

foreclose any mention of the indigency of the defendants or defendant Lerma's purported prior hunger strike and health issues. Because questions and arguments relating to counsels' representation of indigent defendants and defendant Lerma's hunger strike or health issues are prejudicial and irrelevant, the Court should exclude them.

**F.    Affirmative Defenses**

A defendants must provide written notice of their intent to rely on a defense of entrapment, mental incapacity, alibi, or any other affirmative defense. See Fed. R. Crim. P. 12.1-12.3; United States v. Vasquez-Landaver, 527 F.3d 798, 802 (9th Cir. 2008). Defendants have given no such notice and should be precluded from raising these defenses at trial.

**G.    Recorded Statements**

At trial, the government will offer a variety of written and recorded statements. The recorded oral statements will include those made over an automated jail telephone recording system. The government will also offer written statements, primarily in the form of a "kite" (which are handwritten notes on scrap paper that are smuggled by prisoners) or "roll call," and notebooks containing ledgers and other notations.

    1.    Authentication and Identification

The government expects to introduce audio recordings. The master recordings are lengthy, so the government has made clips of the most pertinent parts. Each recording has been produced to the defense and has been placed onto CDs, which the government will offer as exhibits at trial.

The foundation that must be laid for the introduction into evidence of recorded conversations is a matter largely within the

discretion of the trial court. There is no rigid set of foundational requirements. Rather, the Ninth Circuit has held that recordings are sufficiently authenticated under Federal Rule of Evidence 901(a) if sufficient proof has been introduced "so that a reasonable juror could find in favor of authenticity or identification," which can be done by "proving a connection between the evidence and the party against whom the evidence is admitted" and can be done by both direct and circumstantial evidence. United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995).

A recording is admissible upon a showing that it is "accurate, authentic, and generally trustworthy." United States v. King, 587 F.2d 956, 961 (9th Cir. 1978). For example, testimony that a recording depicts evidence that the witness observed or is familiar with from personal observations is sufficient to authenticate the recording. Fed. R. Evid. 901(b); United States v. Torres, 908 F.2d 1417, 1425 (9th Cir. 1990) ("Testimony of voice recognition constitutes sufficient authentication."). Recognition of a speaker's voice is one way in which such authentication may occur along with indicia in the calls themselves, such as the speakers' use of one another's name. Fed. R. Evid. 901(b)(5). "The bar for familiarity is not a high one. This court has held that hearing a defendant's voice once during a court proceeding satisfies the minimal familiarity requirement." United States v. Mendiola, 707 F.3d 735, 740 (7th Cir. 2013).

"Rule 901(b)(5) establishes a low threshold for voice identifications -- an identifying witness need only be minimally familiar with the voice he identifies." United States v. Ortiz, 776 F.3d 1042, 1044-45 (9th Cir. 2015) (internal quotation marks

omitted). "Once the offering party meets this burden, the probative value of the evidence is a matter for the jury." Id. (internal quotation marks omitted). Witnesses may testify competently as to the identification of a voice on a recording. A witness's opinion testimony in this regard may be based upon his having heard the voice on another occasion under circumstances connecting it with the alleged speaker. Fed. R. Evid. 901(b)(5); Torres, 908 F.2d at 1425 ("Testimony of voice recognition constitutes sufficient authentication."). In this case, absent a stipulation, the government expects that FBI Special Agent Joseph Talamantez and a victim witness will authenticate the voices heard on the recordings because they have direct personal knowledge of the persons on the recordings, and thus can identify the audio.

Recorded conversations are competent evidence even when they are partly inaudible, unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy. United States v. Rrapi, 175 F.3d 742, 746 (9th Cir. 1999). Here, for each recording at least one witness (many times multiple witnesses) will review and authenticate the audio.

2.    Transcripts of Recorded Statements

Due to the nature of the case and the evidence that the government intends to introduce at trial, including jail calls and kites, the government believes that transcripts would serve as an aid to the jury while listening and looking at these various recordings. See United States v. Turner, 528 F.2d 143, 167-68 (9th Cir. 1975); United States v. Taghipour, 964 F.2d 908, 910 (9th Cir. 1992); United States v. Fuentes-Montijo, 68 F.3d 352, 354-55 (9th Cir. 1995).

The government intends to introduce audio recordings from jail

14

calls. For the recordings that are entirely in English, or where there is a de minimis use of the Spanish language (such as greetings or salutations), the recording is the evidence, not the transcript. See Ninth Cir. Crim. Model Jury Instr. No. 2.6 (Transcript of Recording in English).

Some of the recordings, however, contain both the English and Spanish languages. For such recordings, the transcripts contain italicized portions or parentheticals of the conversations or writings that were translated from Spanish to English. For those italicized Spanish portions, the transcript is the evidence, not the foreign language spoken or written in the recording. See Ninth Cir. Crim. Model Jury Instr. No. 2.7 (Transcript of Recording in Foreign Language). Where there is no dispute as to the accuracy of the transcription, the district court is well within its discretion to allow jurors to use such transcripts and to permit such exhibits into the jury room.  United States v. Pena-Espinoza, 47 F.3d 356, 359 (9th Cir. 1995); see Fuentes-Montijo, 68 F.3d at 355 ("Where, as here, a district court is faced with a jury that includes one or more bilingual jurors and the taped conversations are in a language other than English, restrictions on the jurors who are conversant with the foreign tongue is not only appropriate, it may in fact be essential."). To date, the defendants have not alerted the government to any issues they have regarding the accuracy of Spanish translations provided to them.

### H.  Expert Opinion Testimony

A qualified expert witness may provide opinion testimony on a fact at issue if specialized knowledge will assist the trier of fact. Fed. R. Evid. 702. The Court has broad discretion to determine

15

whether to admit expert testimony. <u>United States v. Andersson</u>, 813 F.2d 1450, 1458 (9th Cir. 1987). Expert opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. An expert may also provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704.

       1.   <u>Government Experts</u>

The government provided timely notice of the experts it intends to call in its case-in-chief and rebuttal. Each of the government's experts meets the requirements of Federal Rule of Evidence 702. The government's experts include: (1) Los Angeles County Sheriff's Department ("LASD") Deputy Devon Self – a Mexican Mafia expert; (2) FBI Forensic Examiner Amanda Bakker -a DNA expert; (3) Los Angeles Department of the Medical Examiner Dr. Lawrence Nguyen – a pathologist who will opine on the cause of death and mechanism of injuries to S.B.; (4) former LASD Senior Criminalist Phil Teramoto – a ballistics expert; (5) FBI Special Agent Trevor Twitchell – a firearm and ammunition interstate and foreign nexus expert; (6) FBI Language Specialist Delio Gonzalez – a Spanish-language expert; and (7) FBI Supervisory Special Agent Mathew Wilde – a historical cell-site and location expert.

       a.   Testimony Pursuant to <u>United States v. Diaz</u>

The government expects Deputy Self to opine on the mental state of most Mexican Mafia members and associates, and Sureño gang members, regarding their knowledge of the Mexican Mafia and its use of violence to achieve its goals. Federal Rule of Evidence 704 limits an expert witness's ability to opine "about whether the defendant did

16

1  or did not have a mental state or condition that constitutes an

2  element of the" charged conduct. Fed. R. Evid. 704(b) (emphasis

3  added). Expert testimony regarding the mental state or condition of a

4  collective intent by a class of persons is appropriate so long as the

5  conclusion is that "'most people' in a group have a particular mental

6  state" and not specific "about 'the defendant'" themself. Diaz v.

7  United States, 602 U.S. 526, 534-38 (2024). Because Deputy Self will

8  not opine on the ultimate issue of a defendants' mental state, this

9  line of questioning is permissible. Id. at 536.

10          2.   Defense Experts

11      Defendants' provided notice of their intent to call the

12  following experts: (1) Dr. Kathy Pezdek – a cognitive psychologist

13  and non-eyewitness identification and bias expert; (2) Anthony Solis

14  – an attorney and federal sentencing and cooperation expert; (3) Tim

15  Gravette – a former BOP employee, litigation consultant, and BOP

16  policies and procedures expert; (4) Jaclyn Garfinkle, an FBI

17  Criminalist; (5) Dr. Judy Melinek, a pathologist; and (6) Dr. Mohini

18  Ranganathan, a psychiatrist and cannabinoids expert.[1]

19      The government moved to limit or exclude defendants' expert

20  witnesses. On February 10, 2025, the Court partially excluded Mr.

21  Gravette unless testimony arises indicating MDC employees do not take

22  their training seriously. The government believes the Court excluded

23  or reserved ruling on the admissibility Anthony Solis.[2] The Court

24  _____

25      [1] Defendants also proffered Mark Eskridge, a digital forensics examiner as an expert witness. Based on the government's motion to

26  dismiss certain counts, the parties agree Mr. Eskridge's testimony is moot. The parties also agreed that motion as to Dr. Ranganathan was moot.

27      [2] In the February 10, 2025 pretrial conference meetings, the

28  Court indicated it denied the government's motion regarding Mr.
                                          *(footnote cont'd on next page)*

denied the government's motion regarding Dr. Melinek after the
government withdrew its objection. (ECF No. 1563.) The parties
believe that there will be no issue having Ms. Garfinkle testify
assuming defendants are able to provide proper notice under Rule 16
prior to her testimony. The Court has yet to decide if Dr. Pezdek
will be permitted to testify. (ECF Nos. 1563, 1564.)

## I.    Case Agent's Lay Testimony Will Aid the Jury's Understanding of the Certain Evidence

The government intends to seek to elicit lay testimony from the
lead case agent, FBI Special Agent Talamantez, regarding the meaning
of certain recorded statements, based on his knowledge of and
participation in the investigation.

Lay opinion testimony is admissible if it is (1) "rationally
based on the perception of the witness," (2) "helpful to a clear
understanding of the witness's testimony or the determination of a
fact in issue," and (3) "not based on scientific, technical, or other
specialized knowledge within the scope of Rule 702." Fed. R. Evid.
701. In United States v. Gadson, the Ninth Circuit made clear that
such testimony, where based on the law enforcement witnesses'
personal observations and direct knowledge of the investigation,
falls under Federal Rule of Evidence 701 and does not qualify as
expert testimony governed by Federal Rule of Evidence 702.

> In applying Rule 701 to the lay opinion testimony of law
> enforcement officers, we have held that an officer's
> interpretation of intercepted phone calls may meet Rule
> 701's "perception" requirement when it is an interpretation
> "of ambiguous conversations based upon [the officer's]
> direct knowledge of the investigation." United States v.
> Freeman, 498 F.3d 893, 904-05 (9th Cir. 2007); see also
> United States v. Simas, 937 F.2d 459, 464-65 (9th Cir.
> 1991) (finding no abuse of discretion in admitting

Solis. To the government's recollection, the Court reserved its
ruling until it heard from the cooperating witnesses. The government
intends to inquire on this matter at the February 19, 2025 hearing.

officers' lay testimony "concerning their understanding of what [defendant] meant to convey by his vague and ambiguous statements").

763 F.3d 1189, 1206 (9th Cir. 2014).[3]

The Court went on:

> In Kevin Freeman, for instance, we held that once the government established a foundation, a police officer could provide lay witness opinion testimony regarding the meaning of statements in the defendant's intercepted phone calls because the testimony was based on the officer's "direct perception of several hours of intercepted conversations—in some instances coupled with direct observation of [the defendants]—and other facts he learned during the investigation." 498 F.3d at 904-05; see also United States v. El-Mezain, 664 F.3d 467, 513-14 (5th Cir. 2011) (allowing lay opinion testimony interpreting telephone calls when "the agents' opinions were limited to their personal perceptions from their investigation of this case"); United States v. Rollins, 544 F.3d 820, 830-33 (7th Cir. 2008) (finding no error in the district court's decision to allow the agent's testimony regarding his "impressions" of recorded conversations when the testimony was "based on the agent's perceptions derived from the investigation of this particular conspiracy").

Id at 1207-08.

Such testimony is admissible even if the testifying officer was not a participant in the recorded conversations. Freeman, 498 F.3d at 904; see also United States v. Jayyousi, 657 F.3d 1085, 1102 (11th Cir. 2011) (holding that a lay witness's testimony was admissible even though "he did not personally observe or participate in the defendants' conversations").

The reason such law enforcement testimony is regularly admitted

---

[3] The majority of the circuits allow officers to provide interpretations of recorded conversations based on their knowledge of the investigation, subject to various safeguards. See United States v. Albertelli, 687 F.3d 439, 444-48 (1st Cir. 2012); United States v. El-Mezain, 664 F.3d 467, 513-14 (5th Cir. 2011); United States v. Jayyousi, 657 F.3d 1085, 1102-03 (11th Cir. 2011); United States v. Rollins, 544 F.3d 820, 830-33 (7th Cir. 2008); United States v. Garcia, 994 F.2d 1499, 1506-07 (10th Cir. 1993); United States v. De Peri, 778 F.2d 963, 977-78 (3d Cir. 1985).

1  in criminal trials is because it serves an important jury function.

> Lay witness testimony regarding the meaning of ambiguous
> conversations based on the witness's direct perceptions and
> experience may also prove "helpful to the jury" for
> purposes of Rule 701.  See Freeman, 498 F.3d at 904-05
> (agent's "understanding of ambiguous phrases" based on the
> "direct perception of several hours of intercepted
> conversations" along with "direct observation" of
> defendants and "other facts he learned during the
> investigation" resulted in testimony that "proved helpful
> to the jury in determining what the [co-conspirators] were
> communicating during the recorded telephone calls"); see
> also Rollins, 544 F.3d at 832-33 (agent's testimony based
> on listening to every intercepted conversation, and other
> "personal observations and perceptions" related to the
> specific case at issue "assisted the jury in determining
> several facts in issue").

Gadson, 763 F.3d at 1207.

Courts have admitted opinion testimony by law enforcement agents
on a number of other issues too, such as: (1) the modus operandi of
drug traffickers, United States v. Espinosa, 827 F.2d 604, 612 (9th
Cir. 1987) (holding that district court properly admitted law
enforcement officer's expert testimony expert on the modus operandi
of narcotics traffickers, including use of "stash pads" for drugs);
(2) the use of guns by drug traffickers, United States v. Perez, 116
F.3d 840, 848 (9th Cir. 1997); and (3) a defendant's apparent attempt
to avoid surveillance, United States v. Andersson, 813 F.2d 1450,
1458 (9th Cir. 1987). An experienced narcotics agent's opinion
testimony may be based in part on information from other agents
familiar with the issue. United States v. Beltran-Rios, 878 F.2d
1208, 1213 n.3 (9th Cir. 1989).

Here, Special Agent Talamantez personally participated in nearly
every significant investigative step in this case, which included
listening to essentially every recording, reading every kite or roll
call, and being physically present at or responding to many of the

20

significant events. As such, Ninth Circuit precedent well supports his testimony whereby he will employ his significant knowledge of the case to help the jury navigate and interpret the sometimes complex, concealed, or just chaotic recorded written or oral statements in this case.

### J.    Discretion as to Order of Proof

The order of proof is a matter committed to the discretion of the district court, which may conditionally introduce evidence or otherwise permit deviations from the natural order of a case. See, e.g., United States v. Zemek, 634 F.2d 1159, 1169 (9th Cir. 1980); see also United States v. Perez, 658 F.2d 654, 658 (9th Cir. 1981)(court may admit co-conspirator statement subject to motion to strike if foundation for admissibility not laid, so long as the motion to strike would cure any defect); United States v. Turner, 528 F.2d 143, 162 (9th Cir. 1975) ("The trial judge has wide discretion in supervising the order of proof in a conspiracy case."); United States v. Avendano, 455 F.2d 975, 975 (9th Cir. 1972) (calling witnesses out-of-order).

### K.    Physical Evidence

The government will seek to introduce physical evidence recovered during the investigation, including recovered firearms and ammunition. Federal Rule of Evidence 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must provide evidence sufficient to support a finding that the item is what the proponent claims it is." Accordingly, under Rule 901, issues of authenticity and identification are treated as "a special aspect of relevancy." Fed. R. Evid. 901(a) (Advisory Committee Notes).

21

1    Rule 901(a) only requires the government to make a <u>prima facie</u>

2    showing of authenticity or identification "so that a reasonable juror

3    could find in favor of authenticity or identification." <u>United States</u>

4    <u>v. Chu Kong Yin</u>, 935 F.2d 990, 996 (9th Cir. 1991) (quoting <u>United</u>

5    <u>States v. Blackwood</u>, 878 F.2d 1200, 1202 (9th Cir. 1989)). The

6    authenticity of proposed exhibits may be proven by circumstantial

7    evidence. <u>See</u> <u>United States v. King</u>, 472 F.2d 1, 9-11 (9th Cir.

8    1972). If the government makes a <u>prima facie</u> showing of authenticity,

9    the Court should admit the evidence. <u>See</u> <u>United States v. Black</u>, 767

10   F.2d 1334, 1342 (9th Cir. 1985). The credibility or probative force

11   of the evidence offered is ultimately an issue for the trier of fact.

12   <u>Chu Kong Yin</u>, 935 F.2d at 996 (internal quotation marks omitted).

13   To be admitted into evidence, a physical exhibit must be in

14   substantially the same condition as when the crime was committed.

15   Fed. R. Evid. 901. The Court may admit the evidence if there is a

16   "reasonable probability the article has not been changed in important

17   respects." <u>United States v. Harrington</u>, 923 F.2d 1371, 1374 (9th Cir.

18   1991) (quoting <u>Gallego v. United States</u>, 276 F.2d 914, 917 (9th Cir.

19   1960)). This determination is to be made by the trial judge and will

20   not be overturned except for clear abuse of discretion. Factors the

21   Court may consider in making this determination include the nature of

22   the item, the circumstances surrounding its preservation, and the

23   likelihood of intermeddlers having tampered with it.  <u>Gallego</u>, 276

24   F.2d at 917.

25   In establishing chain of custody as to an item of physical

26   evidence, the government is <u>not</u> required to call all persons who may

27   have come into contact with the piece of evidence. <u>Harrington</u>, 923

28   F.2d at 1374. Moreover, a presumption of regularity exists in the

22

1  handling of exhibits by public officials. Id. Therefore, to the

2  extent that alleged or actual gaps in the chain of custody exist,

3  such gaps go to the weight of the evidence rather than to its

4  admissibility. Id.

5    **L.   Photographs**

6     The government intends to introduce photographs of: (1) the

7  defendants, their co-conspirators, other Enterprise associates, and

8  victims; (2) photographs related to the July 14, 2023 assault of M.A.

9  and the recovery of the firearm used to shoot him; (3)  photographs

10  taken during a December 18, 2013 search of Cheryl Castaneda Perez's

11  house, i.e., defendant Lerma's Señora; (4) photographs related to a

12  traffic stop and recovery of contraband from a cooperating witness

13  and Enterprise member; (5) photographs taken during an October 28,

14  2013 search of defendant Carlos Gonzalez's house and the recovery of

15  a firearm and ammunition; (6) general photographs of MDC and Unit 6N,

16  as well as those specific to the June 28, 2020 murder; (7) autopsy

17  photographs; and (8) and other miscellaneous photographs included in

18  the government's amended exhibit list. (ECF No. 1578).

19     Photographs are generally admissible as evidence under Rule 401.

20  See United States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977)

21  (photographs of crime scene admissible). Photographs should be

22  admitted so long as they fairly and accurately represent the event or

23  object in question. United States v. Oaxaca, 569 F.2d 518, 525 (9th

24  Cir. 1978). Also, "[p]hotographs are admissible as substantive as

25  well as illustrative evidence." United States v. May, 622 F.2d 1000,

26  1007 (9th Cir. 1980). Photographs may be authenticated by a witness

27  who "identif[ies] the scene itself [in the photograph] and its

28

coordinates in time and place." See Lucero v. Stewart, 892 F.2d 52, 55 (9th Cir. 1989) (internal quotation marks omitted).

Photographs are authenticated if a witness testifies that it is an accurate representation of facts of which the witness has personal knowledge, and "the witness who lays the authentication foundation need not be the photographer, nor need the witness know anything of the time, conditions, or mechanisms of the taking of the picture." 32 McCormick on Evid. § 215 (7th ed.); see also Fed. R. Evid. 1002 advisory committee's note. Thus, for example, it is suitable for a witness to identify a photograph by the individuals depicted in it regardless of his knowledge of the particular circumstances under which the photograph was taken. "Under the Federal Rules, the witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question." People of Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985). Indeed, "[a] photograph can be authenticated by someone other than the photographer if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it." See United States v. Winters, 530 F. App'x 390, 395 (5th Cir. 2013) (citations and quotations omitted).

## M.    Charts and Summaries

The government will use charts and summaries in order to streamline its case-in-chief and provide an aid to the jury. Under Rule 1006, the Court may admit summaries into evidence where those summaries are based on voluminous, already-admitted exhibits. See, e.g., United States v. Rizk, 660 F.3d 1125, 1130-31 (9th Cir. 2011). "Rule 1006 permits admission of summaries based on voluminous records that cannot readily be presented in evidence to a jury and

comprehended." Id.; see also United States v. Boulware, 470 F.3d 931, 936 (9th Cir. 2006) (upholding district court's decision to admit summary chart of already-admitted evidence where district court "no doubt believed that it would be helpful to have the voluminous financial materials reduced to summary form").

The government will seek to admit a map showing the approximate cell site location data where the phone numbers belonging to Cheryl Perez-Castaneda and defendant Jose Valencia Gonzalez were operating on the day of the assault and shooting of M.A. The government believes that such charts will significantly aid the jury and provide context for the case, and that the Court can issue a limiting instruction at the time of its admission indicating that such charts are evidence but they are not, standing alone, conclusive of any element.

### N.    Business Records and 902(11) Notice

At trial, the government anticipates offering business records into evidence. Such records of "regularly conducted activity" fall within an exception to the rule against hearsay and are admissible either through "the testimony of the custodian or another qualified witness" or "by a certification that complies with Rule 902(11)." Fed. R. Evid. 803(6)(D). In this case, absent a stipulation, the government will admit these records with a certification that complies with Rule 902(11). The government previously provided copies of those records in discovery to defense counsel and has or will provide the corresponding certifications by appropriately qualified custodians of records, thereby affording opposing counsel "a fair opportunity to challenge them." Fed. R. Evid. 902(11). On January 6, 2025, the government provided notice pursuant to Federal Rule of

Evidence 902(11) of its intent to introduce Sprint Call Detail and Subscriber Records and JPay records. On February 17, 2025, the government provided a supplemental notice as to these Sprint Call Detail and Subscriber records. To date, defendant has not raised any objection to the admission of any of these business records.

**VI.  CONCLUSION**

The government respectfully requests permission to file additional trial memoranda if necessary.

Dated: February 18, 2025            Respectfully submitted,

                                    JOSEPH T. MCNALLY
                                    Acting United States Attorney

                                    LINDSEY GREER DOTSON
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                    _____/s/ Jason A. Gorn_____
                                    KYLE W. KAHAN
                                    KELLYE NG
                                    JASON A. GORN
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA