KENNETH M. MILLER (SBN 151874)
Ken@KMMillerLaw.com
26944 Camino de Estrella, Suite B
Capistrano Beach, California 92624
Phone: 949-388-3440

RICHARD G. NOVAK (SBN 149303)
Richard@RGNLaw.com
P. O. Box 5549
Berkeley, CA 94705
Phone: 626-578-1175

**Attorneys for Defendant**

**CARLOS GONZALEZ**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL LERMA, ET AL.,<br><br>Defendants. | **BEFORE THE HONORABLE GEORGE H. WU, DISTRICT JUDGE**<br><br>**Case No.: CR 18-00172-GW**<br><br>**DEFENDANT CARLOS GONZALEZ' REPLY IN SUPPORT OF HIS MOTION FOR JUDGMENT OF ACQUITTAL**<br><br>**HEARING DATE:  1/5/2026**<br><br>**TIME OF HEARING: 8:00 A.M.** |

Defendant Carlos Gonzalez, by and through his counsel of record, Kenneth M. Miller and Richard G. Novak, hereby files his Reply in support of his motion for judgment of acquittal as to counts seven and eight of the operative indictment, and for the striking of a special finding by the jury as to count one.

Dated: November 24, 2025          Respectfully submitted

/s/ Richard G. Novak
Richard G. Novak
Kenneth M. Miller
**ATTORNEYS FOR DEFENDANT**
**CARLOS GONZALEZ**

**REPLY IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL AS TO COUNTS SEVEN AND EIGHT AND FOR THE STRIKING OF A SPECIAL FINDING AS TO COUNT ONE**

**I.**

**Introduction**

While the government's single, consolidated "omnibus" opposition to the separate motions of four defendants under two rules of federal criminal procedure, Rules 29 and 33, may have been an efficient way to respond to those motions, that opposition creates a significant risk of blurring limitations on certain important pieces of evidence, and of improperly imputing conduct and a state of mind to Mr. Gonzalez that was not actually established at trial.

Mr. Gonzalez respectfully implores this Court to carefully distinguish between the scant insufficient evidence that was actually admitted against *Mr. Gonzalez* with respect to the murder of Mr. Bencom and evidence that was admitted only against one or more other defendants. The government fails to do so in its opposition, doubling down on the risk to a defendant of a joint trial by ignoring these important differences.

The government also leverages, as it must in order to have any pretense of sustaining the verdicts, the single statement attributable to Mr. Gonzalez that is related to the death of Mr. Bencom, compounding its prejudicially improper closing argument that his statement "don't pray for me, pray for the other guy" was a "confession." (Tr. Mar. 25, 2025, at 148, l.17) It was error for this court to admit that statement at trial, and the government then drove a truck through the error by exploiting it in its closing argument.

## II.

## The Government's Emphasis on Statements and "Confessions" By Mr. Carlos Gonzalez' Codefendants Highlights the Lack of Evidence Against Mr. Gonzalez

In light of the absence at trial of any forensic evidence connecting Mr. Gonzalez to the murder, or even the planning or cover-up of the murder, of Mr. Bencom, and the absence at trial of any evidence that he engaged in any conduct from which a reasonable trier of fact could conclude he did something to aid and abet Mr. Bencom's homicide, the government's opposition draws this Court's attention, initially, to statements made by the other defendants, blurring the laser focus to which each defendant is entitled.  (Opp'n at 2-8)

First, the government focuses on statements attributed to Mr. Lerma and Mr. Jose Valencia Gonzalez concerning Mr. Bencom's repeated failure to pay his drug debts and the consequences of that pattern.  (Opp'n at 2-3) These statements were not admissible against Carlos Gonzalez.  Nor was there any evidence that these debts were owed to Carlos Gonzalez, or that he had anything to gain from those debts being paid, let alone from Mr. Bencom being killed before he could pay them.

The government then turns this Court's attention to statements attributed to Mr. Lerma and Mr. Sanchez.  (Opp'n at 3-5)  First, the government focuses on a statement by Mr. Sanchez to Mr. Martinez, asking him to instruct Mr. Bencom to come to his cell.  It then focuses on a statement purportedly made by Mr. Lerma to Mr. Martinez after, according to Mr. Martinez, Mr. Bencom was already dead, to leave him alone, let him rest, because "he's a little bit tired".  Again, these statements were not admissible against Carlos Gonzalez, regardless of

their reliability.  There was no evidence that Mr. Gonzalez was present when these statements were made, that he ever knew they had been made, or that he ever told anyone that Mr. Martinez had been given these instructions before and after Mr. Bencom's death, per the timeline provided by Mr. Martinez.

Finally, the government attempts to drag Mr. Carlos Gonzalez into the deep hole allegedly created by Mr. Sanchez' post-offense statements, one made at MDC and another made at a detention center in Arizona. (Opp' at 7-8)  This Court cannot permit to stand the jury's undoubtable inference from these statements that Mr. Gonzalez was being referred to when Mr. Sanchez spoke of others.

Where one defendant on trial with others for an offense the government alleges was jointly undertaken has made no statements that evidence any specific intent to aid and abet or to participate in the charged offense, the admission into evidence of arguably inculpatory statements by all of the other defendants creates an intolerable risk of a manifestly unfair proceeding to that defendant. This is exactly what happened here.  Having previously denied Mr. Gonzalez' motions to sever, the absence of evidence of Mr. Gonzalez' participation, in any manner, in the death of Mr. Bencom must be viewed separate and apart from the statements made by others that the government argues prove their guilt. They do not and cannot establish Mr. Gonzalez' guilt and a judgment of acquittal is required.

//

//

//

//

//

## III.

### This Court's Admission of Mr. Gonzalez' Statement, Per Mr. Tawa, That He Should Pray for Mr. Bencom Was Improperly Transmogrified by the Government Into a "Confession"

Prior to Mr. Tawa's trial testimony, Mr. Gonzalez warned this Court that admission of Mr. Tawa's testimony-that while in the SHU he overheard an unknown person whose voice he believes was Mr. Gonzalez' state that he (Mr. Tawa) should pray for someone he (Mr. Tawa) assumed was a reference Mr. Bencom-was not admissible under rules 403 and 404. This Court overruled that objection.

Then, in closing, the government improperly characterized the statement that Mr. Tawa attributed to Mr. Gonzalez as a "confession." (Tr. Mar. 25, 2025, at 148, l. 17) As this Court knows, Mr. Tawa acknowledged that he overheard this statement *after* Mr. Bencom's death had occurred *and* it was well known to staff and inmates alike on 6-North.  Therefore, the inference and explicit argument that this statement should be viewed by the jury as a confession, an acceptance of responsibility, by Mr. Gonzales for causing Mr. Bencom's death is wholly improper prosecution argument built upon an error by this Court concerning its admissibility.

"[N]ot every statement of a party may meet the definition of a confession…" *United States v. Latour*, 75 M.J. 723, 728 (N-M Ct. Crim. App. 2016); *See, e.g. United States v. Volpendesto*, 746 F.3d 273, 290 (7th Cir. 2014) (a statement by a defendant that he was at a jewelry store on the day it was bombed was not a "confession" that he committed the bombing).  "A confession is a criminal suspect's oral or written acknowledgement of guilt, often including details about the crime." *Black*

1  *v. W. Va. State Police*, 696 F.Supp.3d 236 (S.D. W.Va. 2023) (quoting

2  *Confession, Black's Law Dictionary* (11th ed. 2019)).

3      The government's improper characterization of the statement that

4  Mr. Tawa attributed to Mr. Gonzalez as a "confession" cannot be

5  dispatched as harmless argument. As the Supreme Court has explained:

6          A confession is like no other evidence. Indeed, the

7          defendant's own confession is probably the most

8          probative and damaging evidence that can be

9          admitted against him. . . . The admissions of a

10         defendant come from the actor himself, the most

11         knowledgeable and unimpeachable source of

12         information about his past conduct. Certainly,

13         confessions have profound impact on the jury, so

14         much so that we may justifiably doubt its ability

15         to put them out of mind even if told to do so...

16  *Ariz. v. Fulminante*, 499 U.S. 279, 296 (1991) (quoting *Bruton v.*

17  *United States*, 391 U.S. 123,140 (1968) (White, J., dissenting).

18      The government's wholly improper strategic decision to characterize

19  this statement by Mr. Gonzalez as a "confession" in the same vein as the

20  statements attributed by witnesses to the other co-defendants

21  undoubtedly convinced the jury to view it as such.

22      A prosecutor's improper argument warrants relief if it so infected

23  the trial with unfairness as to make the resulting conviction a denial of

24  due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868,

25  40 L. Ed. 2d 431 (1974).

26

27

28

5

On March 28, 2025, the jury returned its verdict as to Mr. Gonzalez after a trial that began on February 25, 2025. (Ex A, ECF 1747) The jury's verdict as to Mr. Gonzalez includes findings of guilt on counts one, seven, eight, and eighteen.

Mr. Gonzalez concedes that there *was* sufficient evidence presented at trial to support the jury's guilty verdict on count eighteen. However, there *was not* sufficient evidence to support its verdict as to counts seven and eight which, generally, allege that he aided and abetted the murder of Steve Bencom.

With respect to count one, which alleged that Mr. Gonzalez joined a conspiracy to conduct or participate in the conduct of the affairs of a racketeering enterprise, Mr. Gonzalez concedes that there was sufficient evidence presented at trial to support the jury's *verdict* on count one, but contends that there *was not* sufficient evidence to support the *special finding* that Mr. Gonzalez knew or contemplated that one or more members of the conspiracy would engage in a pattern of racketeering activity consisting of *murder*.

Therefore, pursuant to the legal standards set forth below and in Mr. Gonzalez' Rule 29 motion, and the facts adduced at trial, Mr. Gonzalez moves this Court to enter judgments of acquittal on counts seven and eight, and he moves this Court to strike the murder special finding with respect to count one.

## IV.

## Without More, Mr. Gonzalez' *Mere Presence* and *Knowledge* Are Not A Basis for Criminal Liability

While Mr. Gonzalez' Rule 29 motion emphasized this point, it is especially important to reiterate in light of the complete absence of evidence, either direct or circumstantial, that Mr. Gonzalez participated

in any manner in the murder of Mr. Bencom, that his mere presence is insufficient to establish liability.  Moreover, a suspect's involuntary presence in the vicinity of a murder inside a confined environment such as MDC-Los Angeles cannot be, by itself, circumstantial evidence of his participation in that crime.  It is well understood that "[m]ere association with the principals who actually commit the crime or mere presence in the vicinity of the crime is insufficient to establish guilt as an aider or abettor." *Dunn v. Roberts*, 963 F.2d 308, 313 (10th Cir. 1992).  This is especially so where the trier of fact cannot make any inference by the presence of a confined inmate in an institution or even in the unit where a crime has occurred.

In the absence of: 1) any evidence of Mr. Gonzalez' specific intent to aid and abet, 2) any evidence of actual conduct by him leading to the death of Mr. Bencom, and 3) statements attributed to him concerning his plan to assist in Mr. Bencom's murder, or narration after the fact of what if anything he did to assist, Mr. Gozalez' mere presence is not sufficient to sustain the convictions on Counts Seven and Eight and the special finding with respect to Count One.

## V.

## Conclusion

For the reasons set forth in his motion and above, Mr. Gonzalez moves this Court to enter judgments of acquittal as to counts seven and eight and to strike the "murder" special finding with respect to count one. Mr. Gonzalez does not otherwise challenge the verdict as to count one, nor does he challenge the verdict as to count eighteen.

The government's argument that Mr. Gonzalez confessed to the murder to of Mr. Bencom was an outrageous misrepresentation of the legal significance of his statement, a statement the Court should have

7

excluded in its entirety, as Mr. Gonzalez cautioned.  Relief under Rule 29
is compelled by the absence of: statements by Mr. Gonzalez from which
one can infer a specific intent to aid and abet; statements by Mr. Gonzlez
concerning his own conduct; and forensic or other physical evidence
establishing that Mr. Gonzalez actually did something that contributed to
Mr. Bencom's death.  Accordingly, this Court should grant Mr. Gonzalez'
motion for judgement of acquittal.

Dated: November 24, 2025          Respectfully submitted,

                                  /s/ Richard G. Novak
                                  Richard G. Novak
                                  Kenneth M. Miller
                                  **ATTORNEYS FOR DEFENDANT
                                  CARLOS GONZALEZ**