KENNETH M. MILLER (SBN 151874)
Ken@KMMillerLaw.com
26944 Camino de Estrella, Suite B
Capistrano Beach, California 92624
Phone: 949-388-3440

RICHARD G. NOVAK (SBN 149303)
Richard@RGNLaw.com
P. O. Box 5549
Berkeley, CA 94705
Phone: 626-578-1175

**Attorneys for Defendant
CARLOS GONZALEZ**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL LERMA, ET AL.,<br><br>Defendants. | **BEFORE THE HONORABLE GEORGE H. WU, DISTRICT JUDGE**<br><br>**Case No.: CR 18-00172-GW**<br><br>**DEFENDANT CARLOS GONZALEZ' REPLY IN SUPPORT OF HIS MOTION FOR A NEW TRIAL AND FOR EVIDENTIARY HEARING**<br><br>**HEARING DATE: 01/05/2026**<br><br>**TIME OF HEARING: 8:00 A.M.** |

Defendant Carlos Gonzalez, by and through his counsel of record, Kenneth M. Miller and Richard G. Novak, hereby files his Reply in support of his motion for a new trial, and for an evidentiary hearing on his motion.

Dated: November 24, 2025         Respectfully submitted

/s/ Richard G. Novak
Richard G. Novak
Kenneth M. Miller
**ATTORNEYS FOR DEFENDANT CARLOS GONZALEZ**

# REPLY IN SUPPORT OF MOTION FOR A NEW TRIAL AND FOR EVIDENTIARY HEARING

## I.

## Introduction

The government's opposition to Mr. Gonzalez' motion for a new trial is a desperate failed attempt to dismiss out of hand the powerful affidavits of two MDC inmates who each state, under oath, that Jose Martinez admitted to them that he murdered Mr. Bencom. "No one can doubt that a confession by another party to the crime for which petitioner has been tried and convicted, if discovered after conviction, would be grounds for a new trial." *Casias v. United States*, 337 F.2d 354, 356 (10th Cir. 1964).

Shockingly, the government, with every opportunity to do so, fails to tender an affidavit from Mr. Martinez contradicting the affidavits of Mr. Navarro and Mr. Macias, and fails to explain why it did not, relying instead on conclusory statements that, in the opinion of its lawyers, Mr. Martinez likely would not have made such statements. (Opp'n at 29, n.14)

As explained below, the evidence Navarro and Macias would provide at a new trial, that Mr. Martinez admitted to each of them, separately, that he killed Mr. Bencom in their cell while on a bad spice trip, is newly discovered within the meaning of the "newly discovered evidence" portion of Rule 33. It is also "material" to the primary disputed issue at trial, the identity of Mr. Bencom's killer. It is not, as the government argues, merely impeachment on a collateral issue.

Nor, as the government suggests, can this Court simply dismiss out of hand affidavits because they present a factual narrative that is at

2

odds with the prior trial testimony of the government's star witness. That fact does not render their statements lacking in credibility.

Any credibility determinations that this Court may undertake can only be made after an evidentiary hearing. Cases involving confessions that another person committed the offense for which the defendant was convicted particularly warrant an evidentiary hearing. *See, e.g., United States v. Hamilton*, 559 F.2d 1370, 1373-74 (5th Cir.1977); *De Binder v. United States*, 303 F.2d 203, 204 (D.C. Cir. 1962). A district court abuses its discretion by denying an evidentiary hearing where it would lead to evidence that supports the grant of a new trial. See *United States v. Espinosa-Hernandez,* 918 F.2d 911, 913–14 (11th Cir. 1990); *De Binder*, 303 F.2d at 204.

## II.

## The New Evidence, Two Separate Statements by Mr. Martinez That He Personally Killed Mr. Bencom, Is "Newly Discovered" Within the Meaning of Rule 33

The government argues that the statements of Mr. Navarro and Mr. Macias, which were not obtained until after trial, are not "newly discovered" because Mr. Gonzalez could have learned of their existence prior to trial. This argument is absurd and should be rejected.

MDC Los Angeles is home to hundreds of inmates on any given day, there is significant coming and going of inmates, and the housing assignments of inmates are not readily available to anyone other than DOJ employees. The government's argument implies that it is necessary for a defendant who learns that an incarcerated cooperating witness will testify for the government to attempt to interview every other incarcerated individual who may have had contact with that witness over an expansive period of time. Here, Mr. Bencom died in

3

June 2020 and the trial began more than four years later. The government's last minute disclosure of Mr. Martinez' custody records, just prior to his testimony, demonstrates the absurdity of its assertion. This cannot possibly be a situation in which Mr. Gonzalez, or more accurately his counsel, lacked diligence in not hunting for the proverbial needle in a haystack, especially where there was no basis to know that the needle even existed.

A Fifth Circuit decision affirming a district court's grant of a new trial based on newly discovered evidence, over the government's argument that there was a failure of diligence, is instructive. In *United States v. McRae*, 702 F.3d 806, 841 (5th Cir. 2012), the district court properly relied on "its own observations of the overall diligence exhibited by McCabe's attorneys throughout this case." "Diligence does not require perfect hindsight." Just as McCabe's attorneys had "no reason to suspect that another copy of the disputed police report existed" Mr. Gonzalez' counsel had no reason to know or even believe that Mr. Martinez had made inculpatory statements to other MDC inmates before learning of them when the inmate witnesses came forward after trial. *Id.* at 841.

It would be different if Mr. Navarro or Mr. Macias had been Mr. Martinez' cellmate at some point in time (they were not), or if their names had appeared in discovery in connection with Mr. Martinez (they did not), or if Mr. Martinez had informed the government that he had discussed the murder of Mr. Bencom with others (he did not).[1]

---

[1] If the government was aware that Mr. Martinez admitted to anyone after the discovery of Mr. Bencom's body that he participated in any way in his murder, it has not disclosed that to Mr. Gonzalez. Mr. Gonzalez suspects that it did not have such evidence, given the government's clear obligation to disclose it if it did, and therefore the argument that Mr. Gonzalez' counsel were not diligent because they did
(Continued...)

4

The government's argument, that a defendant has an obligation under Rule 33 to seek out every inmate who may have ever communicated with an incarcerated government witness about their anticipated testimony, is not supported by any case law, and would create practical hurdles to effective trial preparation that are no doubt obvious to the Court.

There is no real issue here of diligence.  The statements made by Mr. Martinez to Mr. Navarro and Mr. Macias were not known to defense counsel until after trial, and there was no reason for counsel to have known of them before these inmates came forward.[2]

### III.
### The Proffered Trial Testimony of Mr. Navarro and Mr. Macias Is Material to *The* Central Disputed Issue at Trial: The Identity of Mr. Bencom's Killer

The government's second argument, that the proffered testimony of Mr. Navarro and Mr. Macias is not material and is simply impeachment (Opp'n at 30-32), is also wrong as a matter of law.  As the Fifth Circuit explained in *United States v. Piazza*, "evidence is certainly material as it goes to whether another person committed the acts of which the jury found [Chad] guilty." *United States v. Piazza*, 647 F.3d 559, 569 (5th Cir. 2011) (quoting the findings and rulings of the district court below, which it affirmed).

The *central* issue in this trial was the identity of the person or persons who killed Mr. Bencom.  According to Mr. Navarro, Mr.

---

not go looking for such evidence takes the duty of diligence to a place the law does not require.
[2] If the government is suggesting that Mr. Gonzalez' counsel knew of Mr. Martinez' inculpatory statements to Mr. Navarro or Mr. Macias before trial, to be clear, that would be false.  They did not.

Martinez admitted to him that he killed Mr. Bencom. According to Mr. Macias, Mr. Martinez admitted to him as well that he killed Mr. Bencom. The entire defense presentation of evidence, including that supported by forensic pathology and BOP correctional officers, focused on Mr. Martinez as the single assailant.

The government's argument that the testimony of these witnesses is merely impeaching and not material must be rejected. While it is true, as a by-product of Mr. Martinez being a government witness, that their testimony would also be impeaching, and significantly so, their proffered testimony would be admissible at a new trial as direct substantive evidence that someone other than the defendants killed Mr. Bencom.

Even if Mr. Martinez is unavailable to testify at a new trial, the testimony of Mr. Navarro and Mr. Macias would be admissible. The statements made to them by Mr. Martinez are clearly statements against his penal interest within the meaning of Federal Rule of Evidence 804(b)(3). No reasonable person would make such statements unless they were true because they would expose him to criminal liability. (Fed R. Evid. 804(b)(3)(A)). Moreover, his statement is "supported by corroborating circumstances that clearly indicate its trustworthiness." (Fed. R. Evid. 804(b)(3)(B)).

The corroborating circumstances that indicate the trustworthiness of the proffered testimony of Mr. Navarro and Mr. Macias are numerous. Mr. Martinez made these admissions to two separate individuals, Mr. Navarro and Mr. Macias. He informed them that he killed Mr. Bencom while on a bad drug trip, a fact which is wholly consistent with the undisputed fact that Mr. Martinez was a serious drug addict. The record is replete with evidence of that, including his

use of Spice while in custody at MDC and any other controlled substance he could get his hands on.  Mr. Martinez also had a well-documented opportunity to kill Mr. Bencom.  They shared a cell together and were locked down in their cell for many hours during the relevant time period.  The testimony of forensic pathologists permits the conclusion that one person may have killed Mr. Bencom.

The government's argument about impeachment is an attempted but transparent sleight of hand to distract this Court from the obvious materiality of the newly discovered evidence.  It is also notable that the government did not, in support of its opposition, tender an affidavit from Mr. Martinez disputing the sworn assertions of Mr. Navarro and Mr. Macias, nor did it explain why it did not.  (*See* Opp'n at 29, n.14 arguing, without evidence, that "it strains credulity" that [Martinez] would confess, seek advice, or seek protection.)

Of course, Mr. Martinez' statements to Mr. Navarro and Mr. Macias are also (not only) admissible to impeach Mr. Martinez at a retrial should he testify again.  However, they are not impeaching on a collateral matter.  With respect to his trial testimony in which he denied killing Mr. Bencom, Mr. Martinez made categorically inconsistent statements to Mr. Navarro and Mr. Macias.  (Fed. R. Evid. 801(d)(1)(A)).

Mr. Navarro and Mr. Macias are not witnesses whose testimony would be cumulative to the paths of impeachment permitted by this Court during trial, which included his aggravated criminal history, and his motive to curry favor with prosecutors in order to obtain a lower sentence in his own case.

The proffered new trial evidence is clearly material within the meaning of Rule 33.

7

## IV.

## The Newly Discovered Evidence Would Probably Result in Acquittal on the Murder Charges

There are two fundamental reasons why the newly discovered evidence "would probably result in acquittal," the applicable standard. The first reason is that Mr. Martinez' testimony was apparently the government's most persuasive evidence, albeit without corroboration on significant issues. He claimed that Mr. Lerma told him that leave his "tired" cellmate alone, and that Mr. Lerma and Mr. Jose Valencia Gonzalez both forced him to stay with Mr. Bencom's body until they decided it was time to disclose the situation and then brought him food to his cell specifically so that he would not have to leave Mr. Bencom alone.  No witness or video corroborated any of this testimony.

The remainder of the evidence was largely a wash or, on balance, actually favored the defendants.  Some witnesses said that inmates were required to stand for count; others said they were not. The government had to impeach BOP personnel in order to keep alive its theory that Mr. Bencom was killed the day before he was found, favoring the testimony of cooperating witnesses over DOJ employees.

Neither pathologist could rule out that only one person killed Mr. Bencom, nor that he could not have been killed during the time period that he was locked down in his cell with Mr. Martinez.

While some of the defendants allegedly made inculpatory statements to Mr. Martinez or others (although, importantly, not Mr. Gonzalez, whose only statement was improperly characterized by the government as a "confession") none of those statements were recorded or in writing, and each of the witnesses to those statements has

significant credibility issues. There was no forensic evidence that either implicated Mr. Gonzalez or ruled out Mr. Martinez.

Testimony by two individuals that Mr. Martinez admitted to them that he killed Mr. Bencom would be highly probative of the identity of the actual killer and would probably lead to acquittal, unless the government could convince a jury that these two, independent witnesses are less trustworthy than their own inmate witnesses.

The second reason why the newly discovered evidence would probably result in acquittal is because there is no extrinsic evidence that the statements of these witnesses are false. The government argues, with absolutely no authority, that Mr. Navarro recently testified falsely in his own trial (Opp'n at 29, ll. 5-7). This bare assertion is not supported by a finding to that effect by a jury or a judge, or anyone else. It is a bare assertion that this Court should reject. Similarly, the fact that Mr. Macias is charged with criminal offenses (Opp'n at 29, ll. 7-8) in the context of this trial, cannot be so easily equated with a lack of credibility. Without its own convicted felon witnesses, the government had little evidence to support the charges against Mr. Gonzalez. Two claimed to see him go into Mr. Bencom's cell, but the video did not corroborate that. One claimed he made a statement about the need to pray for Mr. Bencom, but that statement was made after the entire institution knew that he was dead and presumably in a retrial the court would prohibit the government from again describing that statement as a "confession" as it is not and it was improper to do so.

//
//
//

## V.

## An Evidentiary Hearing Is Necessary

Cases involving confessions that another person committed the offense for which the defendant was convicted particularly warrant an evidentiary hearing. *See, e.g., United States v. Hamilton*, 559 F.2d 1370, 1373-74 (5th Cir.1977); *De Binder v. United States*, 303 F.2d 203, 204 (D.C. Cir. 1962). A district court abuses its discretion by denying an evidentiary hearing where it would lead to evidence that supports the grant of a new trial. See *United States v. Espinosa-Hernandez*, 918 F.2d 911, 913–14 (11th Cir. 1990); *De Binder*, 303 F.2d at 204.

Under the facts presented here, it would be clear error for this Court to reject the sworn affidavits of Mr. Navarro and Mr. Macias and simply deny Mr. Gonzalez' motion without an evidentiary hearing.  It appears that the government is well aware that an evidentiary hearing is likely to lead to an order granting Mr. Gonzalez a new trial, especially since for an unknown reason the government did not provide this Court with an affidavit from Mr. Martinez setting forth his personal knowledge about the statements attributed to him by Mr. Navarro and Mr. Macias.[3]

Notwithstanding the government's unsurprising lack of knowledge as to whether or not Mr. Navarro and Mr. Macias will testify at an evidentiary hearing (Opp'n at 29, n. 13), this Court can be assured that both of them know that their affidavits are likely to trigger an evidentiary hearing at which they may face cross-examination, and

---

[3] In fact, it very well may be that the government has forfeited it's right to call Mr. Martinez at such a hearing.  It had an opportunity to permit this Court to evaluate the facial content of the affidavits of Mr. Navarro and Mr. Macias as juxtaposed to whatever would have been in Mr. Martinez' affidavit, but it declined to do so.

10

very well may, and should, trigger a new trial at which they would be called as witnesses. There is nothing in their statements which implicates their Fifth Amendment right to refuse to testify. Their statements do not admit to any unlawful conduct on their parts, and the proper scope of cross-examination would not implicate them in any criminal conduct, aside from the government's easily anticipated effort to raise the potentially intimidating specter of a perjury charge. If, as the government speculates, without more, that they merely have in mind some secondary gang-related gain by testifying in support of Mr. Gonzalez' motion for a new trial (Opp'n at 33, ll. 7-9), that would not trigger a proper invocation of their Fifth Amendment rights.

## VI.
## Conclusion

An evidentiary hearing should be scheduled, after which this Court should grant Mr. Gonzalez' motion for a new trial.

Dated: November 24, 2025        Respectfully submitted,

/s/ Richard G. Novak
Richard G. Novak
Kenneth M. Miller
**ATTORNEYS FOR DEFENDANT CARLOS GONZALEZ**

11