TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
KYLE W. KAHAN (Cal. Bar No. 298848)
KELLYE NG (Cal. Bar No. 313051)
JASON A. GORN (Cal. Bar No. 296179)
Assistant United States Attorneys
    1400/1300/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2238/8408/7962
    Facsimile: (213) 894-0142
    E-mail:   kyle.kahan@usdoj.gov
               kellye.ng@usdoj.gov
               jason.gorn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:18-00172(A)-GW-6 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT CARLOS GONZALEZ; EXHIBITS |
| v. | |
| CARLOS GONZALEZ, aka "Popeye," | Hearing Date: March 9, 2026
Hearing Time: 8:00 a.m.
Location: Courtroom of the Hon. George H. Wu |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California, and Assistant United States Attorneys Kyle W. Kahan, Kellye Ng, and Jason A. Gorn, hereby files its sentencing position for defendant Carlos "Popeye" Gonzalez.

    This position is based upon the attached memorandum of points and authorities, the evidence at trial, the files and records in this

case, exhibits, and such further evidence and argument as the Court may permit.  The government reserves the right to file any supplemental sentencing position that may be necessary.

Dated: March 2, 2026

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

   */s/*
KYLE W. KAHAN
KELLYE NG
JASON A. GORN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Carlos "Popeye" Gonzalez ("defendant") is a violent murderer who does the bidding of the Mexican Mafia. This includes the brutal stabbing and strangulation of S.B., a fellow inmate at the Los Angeles Metropolitan Detention Center ("MDC") in June 2020. Defendant committed this murder because he was a willing and eager participant in a racketeering conspiracy that instilled fear in those under its rule and committed violence against those that defied it. While a member of this criminal enterprise, defendant, a felon, possessed a firearm and ammunition inside of the home he shared with his family. Because of his conduct, defendant now faces a mandatory life sentence.

**II.   DEFENDANT MURDERS S.B. INSIDE OF A JAIL CELL**

Defendant has been in federal custody for this case since July 2018. (Dkt. 183.) The criminal enterprise was the Michael Lerma Cell of the Mexican Mafia, an organization controlled by Michael Lerma, a Mexican Mafia brother, that controlled territories inside and outside of correctional facilities and maintained power through violence and extortion. (Dkt. 1897, "Revised PSR" ¶¶ 34-35, 37.) Defendant acted as a foot soldier in this enterprise – an enterprise he joined years prior as indicated in a journal showing signs and symbols of an affiliation with the Mexican Mafia. (Gov't Trial Ex. 415).

While awaiting trial, defendant was housed at MDC. Beginning in 2020, defendant was housed in the 6 North ("6N") range. Defendant shared a cell with his co-defendant and brother, Jose Valencia Gonzalez, in cell 627. Next door, in cell 627, were defendant's co-

defendants Juan Sanchez and Michael Lerma, a Mexican Mafia brother and head of the criminal enterprise.

In 2020, a Sureño MDC inmate, S.B., accumulated a drug debt to Lerma's enterprise. (Revised PSR ¶ 49.) On June 28, 2020, Lerma ordered the murder of S.B. As part of a coordinated plan between defendant, his brother Jose, and Juan Sanchez, the latter lured S.B. into S.B.'s cell during a 15-minute window for inmates to remain out of their cells during the ongoing COVID-19 pandemic. (Revised PSR ¶¶ 50-51.) As the two entered S.B.'s cell, Sanchez pushed him inside. (Revised PSR ¶ 51.) After Sanchez pushed S.B. into the cell – as seen on surveillance footage and testified to by witnesses – Carlos Gonzalez and Jose Valencia Gonzalez left their cell – where they laid in wait – and followed Sanchez and S.B. (Revised PSR ¶ 51; Gov't Trial Exhibits 1-16, 166.)

Once inside the cell, defendant, Valencia Gonzalez, and Sanchez murdered S.B. The trio strangled S.B., stabbed him twice in the heart, and once in the eye. (Revised PSR ¶ 52.) Then they placed S.B. on the bottom bunk, covered him with a blanket, and left him there.

**III. DEFENDANT, A FELON, POSSESSES A FIREARM AND AMMUNITION**

On October 28, 2013, law enforcement searched defendant's home, a home he shared with his wife and two children. Concealed inside of sock inside a jacket in defendant's bedroom closet, law enforcement found a Walther, model PPK, .380 caliber semi-automatic pistol and eight rounds of .380 caliber ammunition. (Revised PSR ¶ 48; Gov't Trial Exhibits 411, 412.) Defendant was prohibited from possessing a firearm due to his prior felony convictions for vehicle theft and possession of a firearm by a felon. (Revised PSR ¶ 48.) Inside of

2

his home, law enforcement also found a notebook with defendant's moniker, cherry drawings in reference to the Cherryville gang, Lerma's moniker, and the number "13," a reference to the Mexican Mafia. (Gov't Trial Exhibit 415.)

**IV. DEFENDANT KIDNAPS A WOMAN WITH A FIREARM**

In May 2015, defendant and co-defendant Sanchez kidnapped and conspired to kill C.V. because they wanted what little money she had. As part of this plan, the two enlisted another man, R.R., to drive them to where to a place where they would kill C.V. As part of this plan, both defendant and Sanchez carried firearms and handcuffed C.V. inside of the car. Before they could complete their plan, Pomona Police Department Officers attempted to pull the car over. Defendant and Sanchez both ordered R.R. to drive and a brief police pursuit occurred. During the pursuit, both defendant and Sanchez ditched their firearms. Officers were able to stop the car and rescue C.V.

Both defendant and Sanchez were charged by the Los Angeles District Attorney's Office with kidnapping both C.V. and R.R., using a firearm during the kidnappings, assault with a firearm against R.R. and an enhancement for committing the acts for a street gang. (Gov't Exhibit ("Ex.") A – Criminal Complaint). In August 2015, R.R. and C.V. testified against defendant and Sanchez in a preliminary hearing. At the conclusion, defendant and Sanchez were held to answer on the charges. (Gov't Sealed Ex. B – R.R. and C.V. preliminary hearing transcripts). In March 2016, defendant pled no contest to kidnapping and a firearm enhancement and was sentenced to 15 years in prison. (Gov't Ex. C – Judgment and Commitment Orders; Revised PSR 101.)

3

**V.     VICTIM IMPACT STATEMENT AND RESTITUTION**

Defendant's role in the enterprise led to the brutal murder of a father.  (See Gov't Sealed Exhibit D – Victim Impact Statement.)  As S.B.'s daughter recounts in her victim impact statement, defendant's actions were cruel.  (Id.)  Defendant took away S.B.'s ability to walk his daughter down the aisle and dance with her at her wedding.  (Id.)  He took away S.B.'s ability to remain a great father who could provide guidance and loved his daughter unconditionally.  (Id.)

Defendant has left S.B.'s daughter, A.B., longing for a dad who cannot come back because of his vile actions.  (Id.)  Throughout this trial, it was clear that defendant had control over those in his dominion.  Sadly, as demonstrated here, his control over those that got in his way reached out to the innocent as collateral damage.  S.B. did not deserve what happened to him.  His daughter did not deserve to lose her father in such a brutal and twisted manner.  Her victim impact statement clearly shows the levels of grief defendant has inflicted on her.  Her ability to forgive speaks volumes of her character.

Given defendant's conduct, in addition to the custodial sentence, he should be ordered to pay – jointly and severally with his co-defendants – the funeral expenses for S.B.  (Gov't Sealed Exhibit E – S.B. Funeral Expenses; Revised PSR ¶¶ 63-65.)

**VI.    GUIDELINES CALCULATIONS**

The United States Probation and Pretrial Services Office calculated a total offense level of 43 pursuant to the following calculations:

///

///

Counts One/Seven/Eight:
  Base Offense Level:        43                U.S.S.G. § 2A1.1(a)

Count Eighteen:
  Base Offense Level:        14                U.S.S.G. §§ 2K2.1(a)(6)

(Revised PSR ¶¶ 66-81.)

After calculating the appropriate total adjusted offense level and incorporating the multiple count adjustment, the USPO calculated a combined adjusted offense level of 43. (Revised PSR ¶ 85.) The Probation Office also calculated a Criminal History score of 19, placing defendant in Criminal History Category VI. (Revised PSR ¶ 104.) The government agrees with these calculations.

With a total adjusted offense level of 43 and a Criminal History Category of VI, the Guidelines Range is life imprisonment. Because defendant was convicted of VICAR Murder and first-degree murder within the special maritime and territorial jurisdiction of the United States, he faces a mandatory life sentence.

**VII. GOVERNMENT'S OBJECTION TO THE REVISED PSR**

The government's sole objection to the Revised PSR is regarding the nature of his March 2016 kidnapping conviction. Defendant was also convicted of using a firearm during the commission of the offense. See Gov't Ex. C.

**VIII.    GOVERNMENT'S RECOMMENDATION**

The government respectfully recommends that the Court impose a sentence of life imprisonment for Counts 1, 7, and 8, and a 10-year

sentence for Count 18, all to be served concurrently, order that defendant pay the mandatory special assessment of $400, and order defendant pay $10,365.24 in restitution to S.B.'s Estate. The government further requests this sentence be ordered to run consecutive to any time remaining in People v. Gonzalez, Superior Court for the State of California, County of Los Angeles, Case No. KA109699. This sentence is appropriate, reasonable, and not greater than necessary, in light of all the factors the Court must consider under 18 U.S.C. § 3553(a).

**A.  Nature and Circumstances of the Offense**

Defendant's role as the eager member of a criminal enterprise and willingness to viciously murder an inmate over a drug debt and respect demonstrates his dangerousness. His direct involvement in the murder of an inmate at a BOP facility and attempts to cover-up the crime reflects his cruelty, his cunning, and his desire to place reputation and gang mentality over a human life. He was loyal to Lerma, a Mexican Mafia member who controlled criminal activities and rules at jail and prison facilities in Southern California, and the city of Pomona. Lerma ran a drug-trafficking and extortion racket that allowed inmates to smuggle, sell, and use methamphetamine and heroin at inflated prices. He further ordered the beatings and stabbings of inmates who broke his rules. Lerma's enterprise members attempted to extort a young woman into giving it a car owed as a debt; an extortion that ended with the woman's boyfriend being shot in the leg.

The murder in this case demonstrates terrible cruelty. S.B. was not simply murdered. He was lured, isolated, and ambushed. He was viciously strangled. He was stabbed twice in the heart. And then he

6

was stabbed in the caruncle of S.B.'s eye – a precise stabbing that was practically undetectable until the autopsy.  The nature and circumstances of defendant's conduct are simply ruthless.  A life sentence is necessary, appropriate, and required given the scope and callousness of his conduct.

### B. History and Characteristics of Defendant

Defendant's history and circumstances, as well as the need to protect the public reflect an ongoing danger to the community. Defendant is a longstanding member of the Pomona Cherryville street gang, a Sureño gang that owes allegiance to the Mexican Mafia.  His tattoos, journal notes and drawings, and conduct show his commitment to the gang.  (Revised PSR ¶¶ 123; Gov't Trial Exhibits 150-156, 415.)  Since the age of 14, defendant has engaged in criminal behavior, starting with a sustained petition in 1997 for robbery. (Revised PSR ¶ 92.)  From there, defendant continued to amass convictions, including felony vehicle theft (Revised PSR ¶ 93), DUI (Revised PSR ¶ 94), firearm possession (Revised PSR ¶¶ 95, 98) and, as discussed above, kidnapping. (Revised PSR ¶ 101.)

Defendant's family history and health issues do not present any kind of mitigating factors before this Court, notwithstanding the mandatory life sentence.  S.B. had a family.  S.B. had to live with the terror of owing a violent enterprise a debt.  S.B. had to suffer being actively strangled and stabbed by three men for that debt. Defendant should have considered his wife and children as he murdered S.B.  Instead, as his history suggests, he places the needs of a gang over everything else.  A life sentence is necessary to minimize the harm he can instill on the community and others.

7

**C.   Need for Deterrence and to Promote Respect for the Law**

Despite having convicted of multiple offenses tied to his gang – offenses that kept him away from his wife, children, and community, defendant decided to participate in a planned and violent murder of an inmate.  That defendant decided to do this while serving a lengthy sentence for kidnapping and using a firearm against a woman only adds to the depravity of his conduct and need for an appropriate sentence.

A life sentence in this case will promote a respect for the law and ensure that those involved in similar racketeering activity for dangerous, violent gangs, understand the consequences for their acts. And the defendant's conduct in this case warrants one of the most severe consequences – a mandatory life sentence and restitution owed to the surviving family of the man he murdered.  Defendant's conduct and history clearly demonstrate a disrespect for the law and to the health and wellbeing of anyone who gets in his gang's way.  Given this, a life sentence is just.

**IX.   CONCLUSION**

For the foregoing reasons, the government respectfully submits that defendant should be sentenced to concurrent life sentences on Counts 1, 7, and 8, a 10-year sentence on Count 18, all to run consecutive to any time remaining in his California state kidnapping sentence, a five-year term of supervised release, a special assessment of $400, and restitution to the estate of S.B. totaling $10,365.24.

**DECLARATION OF KYLE W. KAHAN**

I, Kyle W. Kahan, declare as follows:

1. I am an Assistant United States Attorney in the Central District of California. I am one of the assigned attorneys in the matter of United States v. Lerma, *et al.*, Case No. 2:18-CR-00172(A)-GW-1,6,7,8.

2. Attached to this sentencing memorandum are true and correct copies of the following exhibits:

| Exhibit | Exhibit Name |
|---|---|
| A<br><br>**(UNDER SEAL)** | Criminal Complaint - People v. Gonzalez, Superior Court for the State of California, County of Los Angeles, Case No. KA109699 |
| B<br><br>**(UNDER SEAL)** | R.R. and C.V. Preliminary Hearing Transcripts - People v. Gonzalez, Superior Court for the State of California, County of Los Angeles, Case No. KA109699 |
| C<br><br>**(UNDER SEAL)** | Judgment and Commitment Order - People v. Gonzalez, Superior Court for the State of California, County of Los Angeles, Case No. KA109699 |
| D<br><br>**(UNDER SEAL)** | A.B. Victim Impact Statement |
| E<br><br>**(UNDER SEAL)** | Victim Restitution Document – Funeral Expenses |

3. Because the preliminary hearing transcripts, victim impact statement, and victim restitution receipt contain personal

9

identifying information, sensitive information, or the names of individuals involved in a prior kidnapping offense, the government will move to file those exhibits under seal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on March 2, 2026.

*Kyle Kahan*

KYLE W. KAHAN
Declarant